TEOFILO CAMPOS v. THE STATE.

No. 3172.     Decided May 16, 1906.

**1.—Murder in Second Degree—Expert Opinion.**

Upon a trial for murder, there was no error in permitting a physician to give his opinion in regard to the condition of defendant's mind upon a hypothetical case.

**2.—Same—Evidence—Flight.**

Upon a trial for murder where the evidence showed that the defendant fled across the Rio Grande, and was captured in Mexico, there was no error to show that he was in jail in Mexico when arrested as a fugitive and brought back.

**3.—Same—Evidence Res Gestae.**

Upon a trial for murder where the evidence of the State's witness was practically the same as in a companion case in which his testimony was admitted, there was no error. Following Martinez v. State, 57 S. W. Rep., 838.

**4.—Same—Same Transaction—Intent.**

Upon a trial for murder, where the evidence showed that another party was killed in the same transaction in which deceased was slain, testimony of such other killing, to show the intent and purpose of the parties acting together with the defendant was admissible.

**5.—Same—Evidence—Depositions.**

Where upon trial for murder it was shown that the proper predicate had not been laid for the introduction of the depositions of a witness, there was no error in excluding depositions.

**6.—Same—Charge of Court—Intent—Weapon—Statutes Construed—Principal.**

Upon a trial for murder, where the evidence showed that there was no question as to the intent of defendant's codefendant to kill and who used a spear in killing the deceased, and that it was a deadly weapon, there was no error in submitting article 717, Penal Code, with reference to the instrument or means used; the evidence also showing that the defendant was a principal with his codefendant in the transaction.

**7.—Same—Charge of Court—Reasonable Doubt—Presumption of Innocence.**

Upon a trial for murder, where the evidence showed that several parties attacked the deceased and inflicted a mortal wound upon him with a spear, and there was

a conflict of testimony between the State and defendant's theory as to whether the latter participated in the assault upon the deceased; and the court submitted reasonable doubt, the presumption of innocence, that the burden of proof was on the State and if there was a reasonable doubt as to the defendant's presence or participation in the killing to acquit him, there was no error to not further charge that if there was a probability of the innocence of the defendant to acquit.

Appeal from the District Court of El Paso. Tried below before the Hon. J. M. Goggin.

Appeal from a conviction of murder in the second degree; penalty, nine years imprisonment in the penitentiary.

The opinion states the case.

*A. Jones,* for appellant.—On question of hypothetical case: 14 Texas Crim. App., 545.

*J. E. Yantis,* Assistant Attorney-General, and *Geo. Estes,* District Attorney, for the State.—On question of hypothetical case: Morrison v. State, 40 Texas Crim. Rep., 494.

DAVIDSON, Presiding Judge.—This conviction was for murder in the second degree, with nine years confinement in the penitentiary fixed as the punishment.

The evidence shows that on the night of the difficulty which resulted in the death of deceased, several parties, among others, appellant, had been drinking at the Holguin saloon until about midnight; thence they went to Sambrano or El Paso saloon, where the difficulty occurred in which deceased lost his life. During the same difficulty and immediately connected with it, Aguilar was also killed. The theory of the State is that appellant was acting with Emilo Garcia, Martinez and others. Trivizo (deceased) was a bar tender in Sambrano saloon, which is called in the record "the El Paso saloon." Appellant and his companions entered that saloon, and called for the drinks. They were more or less intoxicated at the time. Shortly after entering the saloon, if not immediately, the difficulty came up, and the parties, four or five in number, assaulted deceased, one of them using what the witnesses term a "spear." Appellant was armed with a large butcher knife. It is made almost conclusively to appear that the party armed with a spear inflicted the mortal wound upon deceased. The evidence is somewhat in conflict as to the relation of appellant to this transaction. The State makes a clear case that he was assisting the party with the spear, and tried to reach deceased with his bowie knife, and it rather indicates that he did not use his knife on him, though he sought to do so. Immediately afterwards they chased Aguilar around and finally killed him outside of the saloon, a few feet from the door, and butchered him in a horrible manner. There was a serious question as to the state of intoxication of appellant. His theory was that he did not recollect engaging in the trouble, though he recollected distinctly the beginning of the difficulty; and then his memory seems to have lapsed.

The State combated this theory of appellant with evidence showing that while he was intoxicated, he knew and realized the environments and understood what he was doing. Be this as it may the court sufficiently and properly charged the jury with reference to his mental condition, produced by the recent use of intoxicants; and of this there is no complaint.

It is contended that the court erred in permitting Dr. Vilas giving his opinion in regard to the condition of appellant's mind upon the hypothetical case. We do not care to discuss this question, as we think the court was entirely correct under the law laid down in Burt v. State, 38 Texas Crim. Rep., 397.

It is also urged for reversal that the court permitted evidence of the fact that appellant had been in jail. There is nothing in this contention. Appellant fled across the Rio Grande a few hours after the homicide, and was gone for sometime, was finally captured and brought back across the river under extradition warrant. The fact that he was in jail in Juarez when arrested as a fugitive and brought back, we think was competent evidence. Flight can be introduced.

It is contended that the court erred in admitting evidence of the witness Santa Ana. The evidence of Santa Ana is practically the same, as we understand it, as in the companion case of Martinez v. State, 57 S. W. Rep., 838, where this question was decided adversely to appellant.

Nor did the court err in admitting evidence of the killing of Aguilar, which was part and parcel of the same transaction and followed immediately upon the killing of deceased. The parties turned from the killing of Trivizo (deceased) and chased Aguilar, and murdered him. This evidence was clearly admissible to show the purpose and intent of the parties, as well as to show the acting together of appellant with the slayer of Trivizo. The facts are all so intimately blended and connected that the entire transaction was admissible. White's Crim. Proc., 1085.

Nor do we think the court erred in refusing to admit the deposition of Bazara, for the purpose of impeachment. An inspection of the statement of fact, in which it was sought to reserve the bill of exceptions, will show that the proper predicate was not laid. It seems that the deposition, if taken at all, was taken to be used in connection with the extradition warrant, before Judge Walthall, the then district judge at El Paso. Judge Walthall had no recollection of taking the deposition; and the evidence fails to connect this deposition or affidavit with the testimony used in connection with the extradition warrant or request.

It is contended that the court erred in charging article 717, Penal Code. That charge is as follows: "The instrument or means by which a homicide is committed are to be taken into consideration in judging of the intent of the party offending. If the instrument be one not likely to produce death, it is not to be presumed that death was designed, unless from the manner in which it was used such intention evidently

appears." The authorities relied upon by appellant are found in 8 Texas Crim. App., 112; and 11 Texas Crim. App., 456. Those cases are not in point; and are upon a different statute. Usually where the weapon is a deadly one and the purpose and intent of the parties was to use it in a deadly manner, the purpose or intent of the party to kill is almost, if not overwhelmingly shown. This does not mean that it necessarily carries with it, or even may carry with it an evil or malicious intent. It applies as a usual rule to the fact to show that the party intended to kill. This may have been upon malice, or it may be in regard to manslaughter or self-defense. The intent of the party to kill would be the same in any event, so far as the specific intent is concerned. The other circumstances of the case must give tone or color to the purpose or intent with which the homicide was committed. There seems to have been no question in this case as to the intent of the party to kill; that is, the one who used the spear, and from the evidence in the case it was clearly a very deadly weapon. Usually it may be said that article 717, does not apply, unless where the intent is to be judged in part from the instrument used. It is necessary sometimes to give the statute in charge in order to properly guard the legal rights of a defendant. If the weapon be not one per se deadly in its character, then the manner of its use, may become a potent factor in regard to the intent. If there is an issue in the case as to whether the party intended to kill, or even if it was a deadly weapon that brought about the death, or if the weapon is not necessarily deadly, but death does result, then it may be necessary to give this in charge to guard appellant's rights in the case. As was said in Burnett v. State, 46 Texas Crim. Rep., 116, "Where a party uses an instrument not likely to produce death by the manner and means of its use, but death does occur, this statute may become a part of the law; but as we understand, it never applies unless the intent is an issue in the case." Burnett's case was one of self-defense from his standpoint, and it was said that if the acts and conduct of the deceased induced appellant to believe that his life was in danger, he had the right to draw his pistol and fire, and continue to fire until all danger was passed. So in that case there was no question of his intent, and he was seeking to justify himself for the homicide. In Hatton v. State, 31 Texas Crim. Rep., 586, it was said, in substance, that if the weapon used was a deadly weapon, and the manner of its use was of a deadly character, the conclusion would be almost irresistible that the intent was to kill. If the weapon was deadly and the purpose of the party was to kill, and it was used in a deadly manner, we believe it would not be error to give this statute in charge to the jury. Nor would it, under such circumstances, be a charge on the weight of the testimony to give this statute in the charge. The court could not inform the jury, however, that by reason of this fact, that the party was guilty of any grade of homicide. However, the court should not assume any fact aginst the appellant which would tend to

prove a culpable homicide. If there was an issue that the party did not intend to kill, the court could not. assume the fact that he did, or that it was an inference from the facts that he intended to kill by reason of the fact that the killing occurred. Under the facts of this case, we do not believe that it was error. On the part of the party who used the spear there could be no question that he intended to kill, as we understand this record. If appellant was a principal with him in the transaction, whether he used the bowie knife or not, he would be as guilty as the party who used the spear; and the wrong of the slayer would be imputed to appellant on the theory that he was the principal in the transaction.

It is contended that the court should have instructed the jury, in substance, that if there was a probability of the innocence of the defendant he should be acquitted; and draws the deduction from this statement that the probability of innocence creates a reasonable doubt. Our law is so far favorable to an accused that it throws around him the presumption of innocence and the reasonable doubt, and places the burden upon the State to overcome both propositions. The court charged this law in the approved forms and favorable to appellant. Going further, he instructed the jury that if there was a doubt in their minds as to whether or not appellant assisted in the killing of deceased, or if there was any doubt in their minds as to his presence and participancy in the killing, or if the State failed to show that he encouraged or aided the party slaying, they should acquit. These charges covered the facts introduced and presented appellant's side of this case as favorable as the law would justify. The State's case made appellant guilty. Appellant contended that he was in a different part of the room at the time deceased was slâin, engaged in an alter-· cation with the party who was subsequently slain outside the saloon, and that he did not participate either in fact or in intent with the party doing the slaying of deceased. The court instructed the jury, if they believed these facts they should acquit. On these issues suggested by the evidence we are of opinion that the charge ·was fully favorable to appellant.

We do not believe there is any reversible error suggested by appellant, and the judgment is affirmed.

*Affirmed.*