Ed Dugan v. The State.

No. 5076.   Decided May 7, 1919.

(Reached Reporter October, 1919.)

1.—Murder—Charge of Court—Instrument Used—Burden of Proof—Presumption.

Where, upon trial of murder, the controverted issue was whether the intent to kill was formed from malice or passion or the necessity of self-defense, the burden was on the State to prove the unlawful homicide to overcome the presumption of innocence, and no presumption from the character of the weapon used was available to discharge this burden, and under the facts of the instant case a charge of the court that the instrument used in committing the homicide should be taken into consideration in judging the intent of the defendant, was reversible error.   Following: Burnett v. State, 46 Texas Crim. Rep., 116, and other cases.   Overruling: Barbee v. State, 50 Texas Crim. Rep., 429.

2.—Same—Self-Defense—Charge of Court—Language Used—Rule Stated.

In a proper case, that is, one in which the evidence shows that the language of the deceased may have given color to his acts, the charge of the court should be so framed as to give the accused the benefit of the language as well as the acts of the deceased, and in such case its limitation to the acts alone has been uniformly held harmful error, and was such under the facts in the instant case.   Following Andrus v. State, 73 Texas Crim. Rep., 329, and this error is enhanced by the charge of the court on provoking the difficulty.   Following: Lockhart v. State, 53 Texas Crim. Rep., 596.

3.—Same—Experimental Evidence—Practice in District Court.

Upon another trial the evidence of experiment upon the body of deceased, to determine whether the blows on his face could have been made with a pistol should be omitted.

Appeal from the District Court of Tom Green.   Tried below before the Hon. C. E. Dubois, judge.

Appeal from a conviction of murder; penalty, ten years imprisonment in the penitentiary.

The opinion states the case.

*Anderson & Upton, Alex Collins,* for appellant.—On question of experimental evidence: Hardin v. State, 49 S. W. Rep., 607; Pearson v. State, 56 Texas Crim. Rep., 607.

On question of court's charge on instrument used: Gallagher v. State, 55 Texas Crim. Rep., 50, 115 S. W. Rep., 46; Burnett v. State, 79 id., 550; Andrus v. State, 73 Texas Crim. Rep., 329, 165 S. W. Rep., 189.

On question of court's charge on self-defense: Lundy v. State, 59 Texas Crim. Rep., 131, 127 S. W. Rep., 1032; Sanchez v. State, 67 Texas Crim. Rep., 453, 149 S. W. Rep., 124; Knox v. State, 74 Texas Crim. Rep., 126, 167 S. W. Rep., 729.

*E. B. Hendricks,* Assistant Attorney General, *J. A. Thomas,* District Attorney, *Wright & Harris,* for the State.—On question of experimental evidence: Brown v. State, 169 S. W. Rep., 437; Marta v. State, 81 Texas Crim. Rep., 135, 193 S. W. Rep., 323; Martin v. State, 51 S. W. Rep., 912; Williams v. State, 60 Texas Crim Rep., 453, 132 S. W. Rep., 345.

On question of charge on self-defense: Campos v. State, 95 S. W. Rep., 1042; Young v. State, 102 S. W. Rep., 1144; Early v. State, 103 S. W. Rep., 868, and cases cited in the opinion; also Pope v. State, 75 Texas Crim. Rep., 50, 170 S. W. Rep., 150; Mason v. State, 74 Texas Crim. Rep., 256, 168 S. W. Rep., 115; James v. State, 74 Texas Crim. Rep., 139, 167 S. W. Rep., 727; Welch v. State, v. State, 66 Texas Crim. Rep., 525, 147 S. W. Rep., 572.

MORROW, JUDGE.—Appellant shot and killed James A. Pasley and appeals from a judgment convicting him of murder.

The deceased was a grocery merchant and the appellant was an employee in a butcher shop, both occupying the same building for business purposes. There was evidence that on the day of the homicide, near the time of closing, a controversy arose between appellant and deceased with reference to the failure to deliver some articles that had been purchased by a customer of the deceased. Some harsh words passed between them but both proceeded to the conduct of their business and some half an hour later they went together in the back end of the store building and engaged in conversation and it was there that the homicide took place. It appears that they went to the rear of the building upon the suggestion of the deceased to talk the matter over. When they were in the rear of the building they were obscured more or less from the view of parties in the building by an ice chest. The theory presented by the State's testimony is that while the appellant and deceased were engaged in conversation that the appellant struck the deceased with some object which he reached up and obtained from a meat rack; that a scuffle ensued and when they became disengaged and were about six or eight feet apart, facing each other, appellant drew his pistol and fired the first shot. Deceased turned and retreated when he was shot, the bullet striking him in the back of the neck killing him. The appellant's theory was that when he went into the back of the building upon the invitation of the deceased that he was unaware of any hostile intention upon the part of deceased and had none himself, but assumed that in their talk they would adjust the matters amicably; that deceased stopped and asked appellant what in the hell he meant by talking to him in the manner that he did, to which the appellant replied that he did not consider his talk any worse than that of the deceased, whereupon the latter said, "Damn you, I will kill you," at the same time drawing a knife and cutting appellant under the arm; that they were close

together and appellant struck deceased with his hand, at the same time retreating backwards deceased pursuing and appellant fighting until he finally struck deceased in the face with his fist knocking him back, when appellant pulled his pistol from his pocket and fired, as he claims, solely for the purpose of protecting himself from what he believed to be the deadly intent of the deceased. There were two gunshot wounds found upon the body of deceased on examination: one a flesh wound entering his neck in front; the other a fatal wound entering the neck in the back. In addition to these there were what were described as superficial wounds on the forehead and the nose. The deceased wore glasses which were broken in the affray and there is evidence that the wounds on his face may have been made in the fall after he was shot. The evidence also showed that the appellant received two stab wounds, one under the arm, the other near the shoulder blade, and there was evidence that these were inflicted by the deceased with a knife which he had in his hand at the time he was killed. These wounds upon appellant were examined by physicians soon after the difficulty and the knife was found by parties immediately after the homicide. The appellant accounted for the possession of the pistol by the statement, that he had some time previously brought the pistol to his place of business with a view of selling it to one of the witnesses in the case, whom he named, and that he had, a few moments before he was called by the deceased to confer about the matter mentioned, put the pistol in his pocket with a view of returning it to his home.

"Instructions were given the jury on the law of murder, manslaughter and self-defense. Appellant's special charge on the presumption of intent to kill, arising from the use of a deadly weapon by the deceased was given, as was also a special charge for the State on the law of provoking the difficulty with intent to injure but not to kill. Exceptions were reserved to the charge on self-defense in failing to inform the jury that in determining whether appellant acted upon a reasonable apprehension of danger the declaration as well as the acts of the deceased were to be considered. He also excepted to the giving of any charge upon provoking the difficulty as well as to the form and substance of that given, and complained of that part of the charge on murder in which the jury were told "that the instrument used in committing the homicide should be taken into consideration in judging the intent."

The fact that appellant intentionally shot and killed deceased was not questioned. The controverted issue was whether the intent to kill was formed from malice or passion, or from a belief in the necessity of self-defense.

The State's burden was to prove an unlawful homicide to overcome the presumption of innocence. No presumption from the character of the weapon used was available to discharge this burden, and the

only matter for the decision of the jury being whether the homicide was lawful or unlawful, the jury could have given the charge in question application to no other question.

On the subject, this court in Burnett v. State, 46 Texas Crim. Rep., 119, said:

"Exception is reserved to the fifteenth paragraph of the charge, which is as follows: 'The instrument or means by which a homicide is committed are to be taken into consideration in judging the intent of the party offending. If the instrument be one not likely to produce death, it is not to be presumed that death was designed, unless from the manner in which it was used such intention evidently appears.' This charge, under the facts, should not have been given. There was no question as to the intent of the party, for appellant used the pistol and used it fatally. Article 717, Penal Code, does not apply to this character of case, and only becomes a part of the law of the given case when the intent is to be judged in part from the instrument used, that is, if it is one not likely to produce death it is not to be presumed that the death was designed, unless from the manner in which the instrument is used such intent evidently appears. Where a party uses an instrument not likely to produce death by the manner and means of its use, but death does occur, this statute may become a part of the law. But, as we understand, it never applies unless the intent is an issue in the case. This was a case of self-defense from the defendant's standpoint; and if the acts and conduct of deceased induced appellant to believe his life was in danger, he had the right to draw his pistol and fire and continue to fire until all danger was passed. So there was no question of his intent. He was seeking to justify his act bringing about the homicide."

That case was followed in Gallagher v. State, 55 Texas Crim. Rep., 51 and in Andrus v. State, 73 Texas Crim. Rep., 329, 165 S. W. Rep., 189. We are of opinion that the statute mentioned, Article 1147, P. C., is not to be the basis of a charge against the accused in any case of homicide. It tends to conflict with the charge on the presumption of innocence, necessary in every case. Jones v. State, 13 Texas Crim. App., 7. It frequently happens, however, that the facts are such that it cannot harm the accused. Campos v. State, 50 Texas Crim. Rep., 104; McKinzie v. State, 96 S. W. Rep., 933; Early v. State, 51 Texas Crim. Rep., 382, 103 S. W. Rep., 871; Manning v. State, 51 Texas Crim. Rep., 215; Young v. State, 102 S. W. Rep., 1144. The case of Barbee v. State, 50 Texas Crim. Rep., 429, on the point, was necessarily overruled in Gallagher v. State and Andrus v. State, supra.

The charge on self-defense directed the jury, in determining whether or not the appellant's conduct was justified in shooting the deceased, to consider the acts of the deceased. The language used is as follows: "That if from the acts of said James A. Pasley there was created

in the mind of the defendant a reasonable apprehension," etc. The statute, Article 1105, P. C., in terms declares that the unlawful intent of the person killed "must reasonably appear by the acts, or by words coupled with the acts of the person killed." In a proper case, that is, one in which the evidence shows that the language of the deceased may have given color to his acts, the charge should be so framed as to give the accused the benefit of the language as well as the acts of the deceased, and in such case its limitation to the acts alone has been uniformly held harmful error. Andrus v. State, 73 Texas Crim. Rep., 329, 165 S. W. Rep., 190; Sanchetz v. State, 67 Texas Crim. Rep., 453, 149 S. W. Rep., 124. There was a conflict in the evidence with reference to the position of the parties and the conduct immediately preceding the homicide, and it is possible the jury may have taken the view that the acts of the deceased, taken alone, were not sufficient to have created in the mind of the appellant a reasonable apprehension of danger, while if they had been instructed that they might also consider his words, a different conclusion might have resulted. From the State's testimony it appears that after the appellant and deceased went to the back of the building at the suggestion of deceased there were words passed between them, but they were not understood by the witnesses. Appellant claims that the deceased said, "Damn you, I will kill you," and followed it with the use of the knife. The blade of the knife was small as appeared from the evidence on the trial, and the wounds inflicted upon the appellant appeared not to have been of a serious character. However, it does not appear that at the time of the encounter he was aware of the size of the knife, and in measuring his culpability the incidents are to be viewed from his standpoint at the time. The probability of harm, in omitting from the charge on self-defense the reference to the words as well as the acts of the deceased, is enhanced by the charge given by the court on provoking the difficulty. In that charge the jury was called upon to decide whether appellant made the first assault, and whether it was an unlawful assault upon the deceased. The words which were used by the deceased might have aided the jury in deciding these issues. The propriety of instructing the jury on the law of provoking the difficulty is, we think, justly challenged. That character of charge is applicable in instances in which the first attack is made by the deceased but is induced by words and conduct of the accused reasonably calculated and intended to provoke an attack which may be used by him as an occasion for doing harm to his adversary. The issue of provoking the difficulty does not arise from evidence which is merely conflicting as to who made the first attack. From the State's standpoint the first overt act was the striking of deceased by appellant with some heavy instrument. A struggle followed which continued until up to the time that appellant fired the first shot. From appellant's view point, as developed by the evidence, the deceased begun the as-

sault on his own initiative and pursued it, using the knife and attempting to do so until the shots were fired. From either standpoint, we think the issue of appellant provoking the difficulty, with the intent to avail himself of an attack by deceased brought on thereby to injure the deceased, was not raised. This conclusion we understand to be in accord with frequent expressions of this court; among them, Casner v. State, 43 Texas Crim. Rep., 12; Lockhart v. Stare, 53 Texas Crim. Rep., 596; Beard v. State, 45 Texas Crim. Rep., 522; Winters v. State, 37 Texas Crim. Rep., 582; Airhart v. State, 40 Texas Crim. Rep., 470; Wilson v. State, 46 Texas Crim. Rep., 527; Pollard v. State, 45 Texas Crim. Rep., 127.

Upon another trial we think the evidence of experiment upon the body of the deceased to determine whether the blows on his face could have been made with a pistol should be omitted.

For the errors pointed out the judgment is reversed and the cause remanded.

*Reversed and remanded.*