# JANUARY, 1925.

---

### L. C. RIORDAN V. THE STATE.

No. 7857. Delivered January 21, 1925.

Rehearing denied, October 14, 1925.

**1.—Murder—Jurisdiction—Plea to—When Presented.**

Where a cause is transferred on the court's own motion, and the venue changed, a plea attacking the validity of the grand jury returning the indictment, cannot be presented in the county to which the venue has been changed. Such pleas must be presented and passed on in the county in which the indictment is originally filed, and a bill of exception there reserved to any adverse ruling. See Art. 630 C. C. P. Vernon's Texas Crim. Stats., Vol. 2, p. 339.

**2.—Same—Evidence—Bill of Exception—Incomplete.**

Where appellant complains that the State was permitted to ask his own witness if he had not told State's attorney that the appellant during the trial of a civil suit, sat in the court room, and looked at Moon, the deceased, appellant's bill presenting the matter not disclosing whether such statement occurred out of the court room, or during the examination of the witness on the trial, presents nothing for reviews; in any event, if there was error, it was not of sufficient consequence to warrant a reversal.

**3.—Same—Evidence—Bill of Exception—Incomplete.**

Where objection is made to a state witness being asked if he knew whether the deceased was in the habit of carrying a pistol, and replying in the negative, in the absence of the surrounding circumstances or setting in which the matter occurred, this court is not as a position to determine that the evidence was error. The ruling of the trial court implies that it was proper, and the burden was upon the appellant to show that it was not. Following Moore v. State, 7 Tex. Crim. App., 14 and other cases cited.

**4.—Same—Evidence—Properly Admitted.**

Where appellant had testified that the continuance of a civil suit, in which he was plaintiff and the deceased was the defendant, just prior to the homicide, affected his mind under his theory of manslaughter, it was not error to permit the state in rebuttal to show by one of deceased's counsel in the civil case, the grounds set up by him in his verbal motion for a continuance of the civil suit.

**5.—Same—Evidence—Surprised by Witness.**

Where counsel for the state was surprised at the answer of the sheriff, that at the time of and shortly after the homicide the appellant did not seem overly excited," it was proper to then ask witness, if he had not testified at the habeas corpus trial that the appellant appeared "apparently rather calm." See Underhill on Crim. Evidence, Sec. 377.

**6.—Same—Evidence—Limiting in Charge.**

While it is the general rule that evidence of an impeaching nature when admitted, should be limited to the purpose of impeachment in the court's charge, if the testimony can be used for no other purpose, or is so inconsequential that no harmful use can be made of it, the failure to limit it, ought not to work a reversal. Following Maines v. State, 23 Tex. Crim. App. 576, Franklin v. State, 38 Tex. Crim. Rep. 346.

**7.—Same—Charge of Court—Errors in—Must be Excepted to.**

Appellant complains of the verbiage used by the trial court in his charge submitting affirmatively appellant's defensive theory on self-defense and manslaughter. If his choice of words rendered the instruction incomplete, in the opinion of appellant, it was his right to have the court correct the fault at the time of the trial.

**8.—Same—Continued.**

The statute Art. 735 C. C. P. establishes the right, and points out the procedure by which it may be secured, namely, by exception presented to the trial court before the charge is read to the jury, "distinctly specifying each ground of objection." In the present case we have failed to find that either by specific exception, or by a special charge the defect was called to the attention of the court so that correction might be made, before the charge was read to the jury. Following Dugan v. State, 86 Tex. Crim. Rep., 130.

ON REHEARING.

**9.—Same—Evidence—Harmless if Error.**

Where it was already in evidence that deceased had stopped payment on a check for $5000.00 given by him to appellant, to permit the bank cashier to testify that the check would have been paid, had not the deceased telephoned the bank to stop payment, could in no way have been injurious to appellant, and, if error, was harmless; and the motion for rehearing is overruled.

Appeal from the District Court of Tom Green County. Tried below before the Hon. C. E. Dubois, Judge.

Appeal from a conviction of murder, penalty ten years in the State penitentiary.

The opinion states the case.

*J. F. Cunningham, W. A. Anderson,* and *Upton & Upton,* for appellant.

*W. A. Wright, Tom Garrard,* State's Attorney, and *Grover C. Morris,* Assistant State's Attorney, for the State.

MORROW, PRESIDING JUDGE.—The offense is murder; punishment fixed at confinement in the penitentiary for a period of ten years.

Appellant and the deceased, Moon, had a business transaction in which Moon purchased from the appellant a number of cattle and executed two checks in payment therefor. Moon had the cattle shipped to Fort Worth with the intent to sell them there. Finding the market unsatisfactory, he decided to ship them to Missouri. The checks not having been paid, appellant objected to Moon's action, and a quarrel and ill-feeling resulted. Appellant took possession of the cattle. Failing to realize from them the amount that Moon had contracted to pay, a civil suit ensued in which the appellant was plaintiff, and Moon and another were defendants. On the day of the homicide the case was continued upon the application of Moon and his co-defendant. Moon and appellant were leaving the court room about the same time and the tragedy occurred at and near the court house. A number of shots were fired by the appellant, one of which took effect in the back of Moon, who at the time seems to have been fleeing. Moon was unarmed.

According to his testimony, appellant was disappointed when the case was continued, left the court room, went to the lower floor of the court house, and while standing there, Moon walked up behind him and used hostile words and gestures putting appellant in fear of death, whereupon in his own protection he fired and continued to do so while, from his standpoint, the danger was apparent.

It appears from the transcript, duly certified by the District Clerk of Sterling County, that the grand jury of that county returned the indictment against the appellant; that the venue was changed to Tom Green County by order of the District Judge upon his own motion in accord with Art. 626, C. C. P. The averment in the plea to the jurisdiction filed in Tom Green County to the effect that the grand jury returning the indictment had adjourned and had not been re-assembled is not, so far as the record reveals, supported by any evidence, and the order of the trial court overruling it implies that the averment is not true. Moreover, this is a matter which the statute requires to be determined in the county in which the indictment is originally filed and that a bill of exceptions be there reserved to any adverse ruling. In the present case, this is not shown to have been done. See Art. 630, C. C. P., Vernon's Tex. Crim. Stat., Vol. 2, p. 339.

It was the theory of the State that the appellant and deceased were both in the court room at the time the civil case was continued and that as soon as Moon left the court room he was followed by the appellant. Upon this subject the witness, Ray, for the State, in describing the locality of the seats in the court room occupied by appellant and deceased, said that he did not know that the appellant was looking at any certain person; that he might have been looking at Moon but the witness was not positive; that Moon went out and that appellant afterwards went out, but whether out the same door through which the deceased went, or another, the witness could not say. The shots were fired very soon after the parties mentioned left the court room. The witness had been a juror in another case and had seen the appellant and deceased about the court room awaiting the calling of the case in which they were interested. The witness noticed that the appellant usually took the same seat each morning and read a newspaper; though he was not positive whether or not appellant was reading the newspaper on the morning of the homicide. State's counsel, on re-direct examination, propounded to the witness this question:

"Did you know that you told me he was not looking at his paper but was looking at Moon at the time?"

To which the witness replied:

"That he could have been; he came in there every morning reading his paper."

Counsel then said:

"And you know that you told me that, don't you?"

To which the witness replied: "Yes, sir."

Objection was made that the State was endeavoring to impeach its own witness. The bill fails to show a conversation between the witness and counsel out of court. The inquiry was not improper if it related to testimony given by the witness while he was under direct examination by State's counsel. In the absence of an authenticated statement showing the contrary, the presumption obtains that the ruling of the court was not improper. However, considering the testimony of the witness and the other parts of the record, if there was error, it was not of such consequence as would require a reversal. From the appellant's own testimony it appears that he and Moon were both in the court room at the time the case was continued and that the encounter occurred very soon thereafter.

Graham, a witness for the appellant, testified that Moon and appellant were sitting near each other in the court room and that when the case was continued, Moon got up and walked out. From the testimony of the witness we quote:

"I don't know what Mr. Riordan did when he got up; he was sitting by me with a newspaper he had been reading, and about the time Mr. Moon got opposite us, or a little past, Mr. Riordan looked up and saw him and got up and laid his paper down and walked out.

* * * When Mr. Moon got further down the south aisle about op-
posite us, Mr. Riordan turned his head and saw him and got up im-
mediately. It is hard to tell how long after that it was until I heard
the first shot; it was possibly in the neighborhood of one to three
minutes:"

It appears in Bill No. 12 that while the witness, Brabham, was testi-
fying upon behalf of the State, he was asked to state whether or not he
knew that the deceased was in the habit of carrying a pistol, to which
he gave a negative answer. In the absence of the surrounding circum-
stances or setting in which the matter complained of occurred (which
are not given in the bill) this court is not in a position to determine
that the evidence was error. It may have been proper. That it was
proper, the ruling of the court implies. The burden was upon the
appellant to show by the bill that it was not. See Moore v. State, 7
Texas Crim. App. 14; Morgan v. State, 82 Texas Crim. Rep. 615;
Conger v. State, 63 Texas Crim. Rep. 327; Edgar v. State, 59 Texas
Crim. Rep. 252; Branch's Ann. Tex. P. C., p. 132.

The witness Hill, one of the attorneys for the deceased in the
civil suit to which the witness Brabham was also a party-defendant,
testified that in making the oral application for a continuance he had
stated the substance of the testimony of the absent witness, F'armer,
to the effect that they expected to prove by Farmer that the appellant
had compelled Mr. Moon to turn over the cattle at Fort Worth and
that appellant had breached the contract. It appears from the court's
qualification that appellant had introduced the subject of the con-
tinuance and he had also testified about the continuance upon the
theory that it bore upon his state of mind and was relevant in support
of his theory that the offense was no more than manslaughter. Un-
der these circumstances it seems that the testimony of Hill made in
the presence of the appellant touching the reasons upon which the
continuance was based and the statement there made upon which
the court acted was not inadmissible.

The witness Roberts, sheriff of Sterling county, while testifying
upon behalf of the State, said that at the time of the homicide and
shortly thereafter the appellant did not seem "overly excited." State's
counsel then asked the witness if he had not testified at the *habeas
corpus* trial that the appellant appeared "apparently rather calm,"
to which the witness replied that if it was written, he presumed that
was his answer. It appears from the bill that the proceeding was
sanctioned upon the theory that State's counsel was surprised by the
answer given by the witness. See Underhill's Crim. Evidence, Sec.
377.

Appellant contends that the proceeding just mentioned rendered it
imperative that the court instruct the jury that the remark of the
witness Roberts could be considered alone upon the question of his

credibility. In this connection we quote from the case of Maines v. State, 23 Texas Crim. App. 576, as follows:

"The general rule is that whenever extraneous matter is admitted in evidence for a specific purpose incidental to, but which is not admissible directly to prove, the main issue, and which might tend, if not explained, to exercise a strong, undue, or improper influence upon the jury as to the main issue, injurious and prejudicial to the right of the party, then it becomes the imperative duty of the court in its charge to so limit and restrict it as that such unwarranted results cannon ensue; and the failure to do so will be radical and reversible error."

If the testimony can be used for no purpose other than that of impeachment, the failure of the court to limit it to that purpose in his charge is not error. Mosley v. State, 36 Texas Crim. Rep. 578. On both of these propositions numerous precedents are found in Branch's Ann. Tex. P. C., Secs. 188 and 189.

We think it may be safely added that if the purported impeaching testimony is of a nature so inconsequential that no harmful use can be made of it, the failure to limit it ought not to work a reversal. Franklin v. State, 38 Texas Crim. Rep. 346. In effect, this is embraced in the above quotation from Maines v. State, *supra*.

In the present case, the witness Roberts testified to no important matter. His former testimony that the appellant was apparently rather calm, considered in the light of his present testimony that the appellant did not seem overly excited, is not deemed, when considered in connection with the other phases of the case bearing upon the issue of manslaughter, of such consequence as justifies a reversal of the judgment.

In the charge on manslaughter, the following appears:

"Although the law provides that the provocation causing the sudden passion must arise at the time of the killing, it is your duty in determining the adequacy of the provocation, if any, to consider in connection therewith all the facts and circumstances in evidence in the case, both before and at the time of the killing, * * * and so in this case you will consider all the facts and circumstances in evidence, both before and at the time of the killing, in determining the condition of the defendant's mind at the time of the alleged killing, and the adequacy of the cause, if any, producing such condition."

There is found in the record no special charge embracing a more detailed catalogue of the items of evidence which in the opinion of the counsel for the appellant might appropriately have been called to the attention of the jury. In the absence of such a request, the propriety of the court in refraining from undertaking such an enumeration seems obvious for the reason that it might have been subject to the complaint of trenching upon the rule against commenting

upon the weight of the evidence or misleading because of inadvertent omissions.

These matters were before the jury and were proper subject of argument by counsel but not such as required special mention in the charge of the court. The cases of Williams v. State, 15 Texas Crim. App. 617, and Lee v. State, 113 S. W. Rep. 303, to which appellant refers are cases in which there was an assault by the injured party which raised the issue of adequate cause.

In those cases, as a matter of law, there were other facts which gave color to the assault and which might have operated on the mind of the accused, and the charge was so worded as to exclude the consideration by the jury of these other matters. The charge in the present case contains no such vice.

Appellant, in his testimony in describing the immediate facts attending the beginning of the difficulty, testified to words used by the deceased as well as to his acts. According to the appellant, the deceased said:

"I guess you see we have made a damned monkey out of you twice, and the next time we will do it over."

Appellant replied:

"God damn you, if you didn't have your hand on your gun, you would not talk to me in such way."

Whereupon the deceased said:

"I will talk to you as I please, and if you don't like it, get ready now."

In instructing the jury, the court, in subdivision (a) used this language:

"That if you believe that at the time of the killing, if any, the deceased reasonably induced the defendant to believe that deceased was about to attack the defendant, or if by the acts of the deceased, it reasonably appeared to the defendant at the time, viewed from his standpoint, that the deceased was then about to attack the defendant, if such an attack, if any, whether real or apparent, was reasonably calculated to create in the mind of the defendant, and did create in his mind a reasonable expectation or fear of death or some serious bodily injury to himself, etc."

The court also charged, in subdivision (b), on the law of threats, and in subdivision (c), gave this instruction:

"You are further instructed that it is not essential to the right of self-defense that real danger should exist, if from the defendant's standpoint, taking into consideration all the facts and circumstances, surrounding the parties, it reasonably appeared to the defendant that he was in danger of death or serious bodily injury, under the law he had the right to defend against such apparent danger to the same extent as if the danger was real, and was not bound to retreat in order to avoid the necessity of killing the deceased."

Appellant complains of this charge, and in his brief and argument insists that there are omissions in the charge which constitute prejudicial error against him and refers to subdivision 1 of Art. 1105 of the Penal Code in which it is declared that:

"It must reasonably appear by the acts or by words, coupled with the acts of the person killed, that it was the purpose and intent of such person to commit one of the offenses above named."

It has been held that where the facts show that the words of the deceased, as well as his acts, may have produced in the mind of the accused a fear of death or serious bodily harm, the court, in instructing the jury, should refer to both the acts and the words. The authorities on the subject are reviewed in Dugan v. State, 86 Texas Crim. Rep. 130., under the facts of which case it was held reversible error to so frame a charge as to limit the jury's consideration to the acts of the deceased.

It is to be observed that the court gave an instruction to the jury upon the law as contained in Art. 1105 of the Penal Code. If his choice of words rendered the instruction incomplete in the opinion of the appellant, it was his right to have the trial court correct the fault at the time of the trial. The statute, Art. 735, C. C. P., establishes the right and points out the procedure by which it may be secured, namely, by exception presented to the trial court before the charge is read to the jury "distinctly specifying each ground of objection." See Arts. 737, 737a, and 743, C. C. P; also Walker v. State, 89 Texas Crim. Rep. 16; Linder v. State, 94 Texas Crim. Rep. 316; Boaz v. State, 89 Tex. Crim. Rep. 523; Parker v. State, #7255, not yet reported.

In the present case, we have failed to find that either by specific exception or by a special charge the defect was called to the court's attention so that the correction might be made before the charge was read to the jury.

The judgment is affirmed.

*Affirmed.*

### ON MOTION FOR REHEARING.

HAWKINS, Judge.—In his motion for rehearing appellant reasserts that errors were committed upon the trial as complained of in the various bills of exception, and also renews his attack upon the charge in several particulars. All these questions (save bill number fifteen) were fully considered and discussed in our original opinion, and we believe were properly disposed of.

In bill number fifteen complaint is made because the cashier of the bank was permitted to testify that when they received deceased's check for $5000.00 payable to appellant they intended to pay it but that deceased telephoned the bank from Fort Worth telling them not to pay it until they heard further from him. The bill recites that it

was already in evidence that deceased had stopped payment on the check. The witness' statement that it would have been paid but for deceased's instruction to the contrary could in no way have been injurious to appellant.

The motion for rehearing is overruled.

*Overruled.*