## Emilio Posos v. The State.

No. 8857.  Delivered March 4, 1925.

Rehearing granted April 22, 1925.

**1.—Murder—Special Charge—Issues Submitted—Properly Refused.**

Where the issues presented in special charges, have been accurately and fairly presented in the court's general charge, such special charges are properly refused.  Repetitions in the charge should always be avoided.

**2.—Same—Bills of Exception—Questions and Answers—Condensed.**

This record contains numerous bills of exceptions that are but transcriptions of the stenographer's notes in question and answer form, with nothing to indicate that they were so framed by permission of the trial court, and cannot be considered.  See Art. 846, C. C. P. Following Jetty v. State, 90 Tex. Crim. Rep. 346 and other cases cited.

**3.—Same—Bills of Exception—Not Comprehensive.**

Complaint is made by appellant by bill of exception, of the predicate for the introduction of a dying declaration, reproduced in the testimony of a witness on a former trial, who had died.  It does not appear from the bill of exception that the dying declaration to which the predicate related, was introduced in evidence, nor is its contents revealed by the bill, and the bill cannot be considered.

**4.—Same—Evidence—Cross-Examination—Not Error.**

Where on cross-examination a question was propounded to appellant. which he answered in the negative, and no effort was made by the state to impeach him on that subject, no error is presented.

ON REHEARING

**5.—Same—Charge of Court—Embracing Art. 1147 P. C. Error.**

Where the uncontradicted evidence disclosed that the death of deceased was caused by a pistol shot, and the theory of the defense was an accidental shooting, it was error for the court to charge the jury Art 1147 of the penal code.

**6.—Same—Art. 1147 P. C. Construed.**

It is apparent that the design of Art. 1147 is to protect the accused in a homicide case against the presumption that the jury might indulge, in conflict with the presumption of innocence.  We are inclined to the view that it has no application in a case in which the homicide was committed with a pistol used as a fire arm, at close range.  The statute seems to be designed for the accused in those cases of homicide, in which death results from the use of a weapon which ordinarily would not be a deadly weapon.  Following Twynian v. State, 96 Tex. Crim. Rep. 439 and authorities there cited.

Appeal from the District Court of Cameron County. Tried below before the Hon. A. W. Cunningham, Judge.

Appeal from a conviction of murder; penalty, five years in the penitentiary.

The opinion states the case.

*Graham, Jones, Williams & Ransome,* of Brownsville, for appellant.

*Tom Garrard,* State's Attorney, and *Grover C. Morris,* Assistant State's Attorney, for the State.

MORROW, PRESIDING JUDGE.—The offense is murder; punishment fixed at confinement in the penitentiary for a period of five years.

The State's theory, as developed from the evidence, is this: Benigno Munoz entered the store of Julian Solis. Gregorio Reyes was present on the outside of the store. Appellant entered, and after making a small purchase, said to Munoz: "Excuse me, I want to talk to you." The two left the store together. A few minutes later, Solis heard a pistol fire. Upon running to the door, he saw Munoz and the appellant scuffling. The witness spoke to them and they separated, going in different directions. It was dark and the exact position of the parties was not discernible by the witness, though he saw their hands above their heads and heard one of them say: "Turn loose, give me the pistol." With these words one wrenched the pistol from the other and they separated. As Munoz was leaving, he said: "Now you will see, I am going to take this pistol and deliver it to the officers." Shortly thereafter appellant came to the witness and asked the whereabouts of Munoz. When he returned, the appellant was drunk and appeared to be angry.

Munoz had received a gunshot wound and died on the following day. He weighed about 185 pounds while the weight of the appellant was 140 pounds.

Reyes testified but threw no light on the transaction.

According to the witness Galvan, he passed the parties about twenty-five steps and heard Munoz say: "Turn loose the pistol, you s—n of a b—h." Appellant turned loose, and Munoz said: "I am going to deliver this to the authorities, you s—n of a b—h." He met Julian Solis and Gregoria Reyes, who said: "There goes Benigno Munoz; Emilio Posos shot him." About a block distant the witness saw the appellant and saw him jump over the fence of the cemetery and came towards the witness and demanded that he deliver the pistol. From the testimony of the witness, it seems that the

appellant had a knife in his hand. He had been drinking but was "well on his feet."

The witness Lopez saw Munoz about eight o'clock at night and was told by him that he had been shoot by Posos. Lopez was a constable and Munoz gave him a pistol. Some of the chambers of the pistol were loaded.

Appellant testified that there had been no previous difficulty between him and the deceased; that upon entering the store of Solis he bought a package of tobacco and a bottle of mescal. He and Munoz went out together and drank of the mescal. Appellant offered to sell Munoz the pistol. Munoz grabbed it and said he had no money. Appellant demanded it and a scuffle ensued in which Munoz got possession of the pistol, and in the scuffle the pistol fired without any intent of the appellant that it should do so. He was not aware that Munoz was shot until the following day. Appellant said he had no intention to shoot Munoz; that they were good friends. After the departure of Munoz, appellant drank the remainder of the mescal and became unconscious from its effect.

The court instructed the jury upon the various issues of the case save that of manslaughter, which he gave in a special charge prepared by the appellant's counsel. The defense of the accidental homicide was, we think, fairly and adequately embraced in the court's charge. There was no error in refusing to repeat it in the special charge.

In the special charge upon the law of manslaughter which was prepared by appellant's counsel and given to the jury, the opening sentence was to the effect that if between murder and manslaughter any reasonable doubt existed in the minds of the jury, it should be resolved in favor of the accused. In view of this charge, we think the court committed no error in refusing to single out the question of the appellant's state of mind and tell the jury to resolve any reasonable doubt that might be entertained upon that subject in favor of the accused. This apparently would have been but a repetition.

Several of the bills of exception found in the transcript are but a transcription of the stenographer's notes in question and answer form. Among these are Bills Nos. 6, 9, 12 and 13. No permission of the trial court to so frame the bills is found in the record, and so far as we are able to discern, no reason existed for the departure from the statutory rule which requires the bills of exception to be in narrative form. These bills therefore cannot be considered. Art. 846, C. C. P.; Jetty v. State, 90 Texas Crim. Rep. 346; Reese v. State, 94 Texas Crim. Rep. 220; Soderman v. State, 97 Texas Crim. Rep. 23.

In Bill No. 8 is embraced an objection to the sufficiency of the predicate for the introduction of a dying declaration which seems to have been attempted by the reproduction of the testimony of Miller who died since giving his testimony on the former hearing. It does not appear from the bill of exceptions that the dying declaration to which the predicate related was introduced in evidence; nor is its contents revealed by the bill. Neither is such information given by the statement of facts. The inability of this court to determine whether there was material error committed in laying the predicate is manifest. To appraise the effect of the ruling, it would be necessary that this court be informed of the nature and substance of the alleged dying declaration and to know that it was received in evidence.

From Bill No. 11 it appears that while the appellant was testifying in his own behalf, two questions were asked, the first being:

"The last time you testified in this cause, you testified that you had shot Munoz because you were defending your property, did you not?"

The other was:

"How do you explain the attack you made on Julian Solis with a knife?"

The objection made was that the questions were unfair in that appellant, one the former trial, had not testified that he shot Munoz in defense of his property, and no testimony had been given to the effect that the appellant had attacked Solis with a knife. These are but objections, not verified as facts; nor is the bill otherwise self-explanatory. It appears from the statement of facts that the case had been tried several times. Solis, an eyewitness, testified that on the night of the homicide and subsequent thereto, appellant came to him and said: "Hello, s—n of a b—h; where is Benigno Munoz? He further said: "I want to talk to you; come over here." They were separated by a distance of three or four feet. The witness saw in the hand of appellant what looked like a big knife. Appellant appeared to be angry.

Appellant testified upon the stand, detailing the circumstances of the encounter in which the deceased lost his life, affirming that the discharge of the pistol was accidental.

Responding to the first question propounded, appellant denied that he had ever testified that he shot Munoz in order to protect his property. The State did not impeach him upon that subject. Whether the record upon the former trial was in a condition to contradict him is not disclosed, but this record contains the appellant's unchallenged denial that he gave the testimony implied in the question to which the objection was addressed.

Appellant testified on direct examination that after the homicide, he became so intoxicated that he lost his mind. Having thus testi-

fied in detail, as to the incidents of the homicide and claiming that after the homicide he became unconscious from the use of drink, we think it was not out of place that he was asked to explain his conduct towards the witness Solis. As stated above, in its recital of the surrounding facts, the bill is too meagre to unable us to value it, and for that reason it fails to show error. However, in looking at the facts, we are of the opinion that if the bill were complete, the result would be the same.

After giving the necessary definitions pertaining to the offense of murder in the first paragraph of the charge, the court, in the second paragraph, expressed himself thus:

"The instrument or means by which a homicide is committed are to be taken into consideration in judging the intent to the party offending. If the instrument be one not likely to produce death, it is not to be presumed that death was designed, unless, from the manner in which it was used, such intention evidently appears."

Exception was reserved to this paragraph and the appellant contends that it was prejudicial to his case.

In the third paragraph the jury was instructed, in substance, that if they believed beyond a reasonable doubt that the appellant, with a pistol and with the intent to kill, did unlawfully and with malice aforethought, shoot and kill the deceased, he would be guilty of murder. In the same paragraph is the following charge:

"Amongst other defenses set up in this case by the defendant is what is known as 'accidental homicide'. That is, that if the deceased was killed by a gunshot wound at the time and place alleged in the indictment, the shot which produced his death was discharged by accident and without any intention on the part of the defendant to inflict death upon the deceased, and that such shot was discharged while the defendant and the deceased were engaged in a scuffle or struggle over the possession of the pistol from which the shot was fired.

"You are instructed that a homicide occurring under such circumstances is accidental and such a homicide is not in violation of law and is entirely excusable and unintentional.

"Applying the foregoing principle and proposition of law to the facts in this case, you are instructed that if the evidence raises in your mind a reasonable doubt as to whether the shot which killed the deceased (if he was killed by such shot) was accidentally discharged in the struggle over the pistol, or unintentionally fired by the defendant, then you will find the defendant 'not guilty' and so say by your verdict."

Under the terms of Art. 743, C. C. P., an error in the charge not calculated to injure the rights of the accused, who has otherwise had a fair trial, is not ground for reversal. See Vernon's Texas Crim. Stat., Vol. 2, p. 501, also p. 507. The charge given

was in substance At. 1147, P. C. the design of which is to protect the accused. See Burnett v. State, 46 Texas Crim. Rep. 116; Gallagher v. State, 55 Texas Crim. Rep. 50; Andrus v. State, 73 Texas Crim. Rep. 329. Even in a case where the evidence does not demand such a charge, the use of it is not necessarily harmful. See Campos v. State, 50 Texas Crim. Rep. 104, and other cases to which reference is made in Dugan v. State, 86 Texas Crim. Rep. 130. Much in point against the complaint of the charge is the opinion of this court, written by Presiding Judge Davidson, in McKenzie's case, 96 S. W. Rep. 932, in which the issues were not dissimilar from those in the present instance, and the writer of the opinion said:

"Viewed from the standpoint of appellant's testimony, that the killing was accidental, it occurs to us this charge was favorable, because the jury were instructed there could be no presumption against him arising from the use of the weapon in regard to the death of the party, unless from the manner in which it was used such intention evidently appears. This it occurs to us would throw the burden of proof upon the State to show the facts which made his intention evident from the facts introduced and protect him in regard to his accidental theory."

In the opinion of this court, taking into account the evidence in the present case, the paragraph of the charge under discussion might well have been omitted, but tested by the same rule, especially in the light of the authorities mentioned, we do not regard the charge as harmful.

The State's evidence, if believed, is deemed sufficient to support the verdict. If the appellant intentionally killed the deceased, the law would imply malice aforethought in the absence of an explanation sanctioned by the jury such as would excuse the homicide or mitigate the offense. The only defense was that of accidental or unintentional shooting. This the jury rejected and accepted the conflicting theory of intentional killing.

The evidence is regarded sufficient to support the verdict, and in the procedure we have found no such fault as would authorize a reversal of the judgment. It is therefore affirmed.

*Affirmed.*

### ON MOTION FOR REHEARING.

MORROW, PRESIDING JUDGE.—Upon a reconsideration of the record in the light of the able motion for rehearing and oral argument thereon, we think we were wrong in holding that the paragraph of the charge quoted in the original opinion embracing the substance of Art. 1147 of the Penal Code, was not prejudicial to the appellant. Art. 1147, supra, reads thus:

"The instrument or means by which a homicide is committed are to be taken into consideration in judging of the intent of the party offending; if the instrument be one not likely to produce death, it is not to be presumed that death was designed, unless, from the manner in which it was used, such intention evidently appears."

On the original hearing we were influenced by the quotation from the opinion in McKenzie's case, 96 S. W. Rep. 932. We believe that opinion is in conflict with others subsequently written by the same distinguished judge as well as by other members of this court in former times. See Burnett v. State, 46 Texas Crim. Rep. 116; Gallagher v. State, 55 Texas Crim. Rep. 50; Andrus v. State, 73 Texas Crim. Rep. 329; Campos v. State, 50 Texas Crim. Rep. 102. From the cases last above mentioned, as well as from Dugan v. State, 86 Texas Crim. Rep. 130, it is apparent that the design of Art. 1147 is to protect the accused in a homicide case against the presumption that the jury might indulge in conflict with the presumption of innocence. We are inclined to the view that it has no application in a case in which the homicide was committed with a pistol used as a firearm at close range. Under some circumstances, such a charge, though not applicable, might not be harmful. The statutes seem to be designed for use in favor of the accused in those cases of homicide in which death results from the use of a weapon which ordinarily would not be a deadly weapon. See Twyman v. State, 96 Texas Crim. Rep. 439, and authorities there cited.

In the present case, the deceased met his death from a pistol shot fired while he and the appellant were engaged in a struggle. There is no question that if the pistol was used as a firearm it was a deadly weapon, but there is no presumption that appellant fired the pistol. The sole issue was whether the pistol was fired by accident or design. If by design, the homicide was culpable; if by accident, it was excusable. Under the facts, it occurs to us that only the statutory presumption operating, was the presumption of innocence. The appellant claims in his testimony that the discharge of the pistol was accidental. This issue we believe should have gone to the jury unburdened with an instruction touching the presumption arising from the use of a deadly weapon.

From what has been said it follows that, in our opinion, the appellant's motion should be granted, the affirmance set aside, the judgment of conviction reversed and the cause remanded, and such is the order.

*Reversed and remanded.*