## HENRY LEE v. THE STATE.

### No. 1393. Decided April 10, 1912.

### Rehearing denied June 19, 1912.

**1.—Murder—Indictment—Manslaughter.**

Where the defendant was convicted of manslaughter on an indictment for murder, having been convicted on a former trial of murder in the second degree, and a verdict on his application having been set aside, he could again be tried on the indictment for murder in the second degree and lesser offenses.

**2.—Same—Jury Wheel—Constitutional Law.**

The jury wheel law as passed by the Legislature in 1907 is constitutional; besides said law has been amended since, so as to meet all the objections made by appellant in his brief; and there being nothing to show that defendant had been deprived of any right, etc., there was no error.

**3.—Same—Evidence—Facts Leading up to Homicide.**

Upon trial of murder, there was no error that the district attorney by questions propounded to a State's witness sought to elicit the fact that defendant, just a few moments prior to this difficulty, had a difficulty with another, to show the circumstances that led up to the tragedy in which the deceased lost his life.

**4.—Same—Evidence—Pictures.**

Where the jury were not permitted to see the pictures which were offered in evidence by the State, no harm could have resulted to the defendant.

**5.—Same—Evidence—State of Feeling—Witness.**

Upon trial of murder, there was no error in permitting the State to show that the State witnesses were on friendly terms with the defendant.

**6.—Same—Evidence—Hearsay.**

Upon trial of murder, there was no error in refusing to admit the declarations of third parties with reference to a watch which defendant had lost when deceased knocked him down, and which were made when the watch was delivered at the police station.

**7.—Same—Evidence—Reiteration—Discretion of Court.**

While it is hardly proper practice to permit the reiteration of a witness' testimony, yet this matter is within the discretion of the court, in the absence of abuse shown.

**8.—Same—Argument of Counsel.**

Where the district attorney, in his argument to the jury, said that he would never submit a case to the jury where the evidence did not justify conviction, and the remarks were withdrawn orally by the court at the request of the district attorney, there was no error.

**9.—Same—Charge of Court—Manslaughter.**

Where, upon trial of murder, the court's charge on manslaughter was a virtual copy of a charge approved on a former appeal, there was no error; defendant having been found guilty of manslaughter.

**10.—Same—Charge of Court—Self-Defense.**

Where, upon trial of murder, the charge of the court fully presented the issue of self-defense as made by the testimony, there was no error.

**11.—Same—Evidence—Circumstances before Homicide—Harmless Error.**

Where, upon trial of murder, the testimony offered by the State, with reference to a prior difficulty between defendant and a third party was ruled out, although it was admissible to show the condition of defendant's mind and the

circumstances that led up to the difficulty, the same if error was against the State and not the defendant.

**12.—Same—Rule Stated—Intent—Motive.**

The scene just prior to and just subsequent to the homicide may be depicted by witnesses, that the jury may get a clear view of the transaction, when such testimony throws light upon the transaction or tends to show intent or motive.

**13.—Same—Adequate Cause—Charge of Court.**

Where, upon trial of murder, the Court in his charge on manslaughter instructed the jury that the statute makes a certain thing or condition adequate cause, among which was an assault and battery causing pain, which was applicable to the facts in the case, and the defendant was convicted of manslaughter, there was no reversible error.

**14.—Same—Charge of Court—Self-Defense—Actual Attack.**

Where, upon trial of murder, the evidence showed that the deceased knocked defendant down, whereupon defendant shot him, there was no error in the court's charge on self-defense to instruct the jury, that if deceased had attacked or was about to attack defendant that he had the right to act in self-defense, etc., and in failing to inform the jury that if deceased made a demonstration on which it reasonably appeared to defendant that his life was in danger, etc., he should be acquitted. Following Simmons v. State, 55 Texas Crim. Rep., 448, and other cases.

**15.—Same—Charge of Court—Grouping Facts.**

Where, upon trial of murder, the court in his charge on self-defense did not group any facts and require the jury to believe all of them, but applied the law to the facts as testified to by the defendant, there was no error on this ground.

**16.—Same—Charge of Court—Self-Defense—Burden of Proof.**

Where, upon trial of murder, the court, in addition to the charge on the presumption of innocence and reasonable doubt, instruced the jury that in all criminal cases the burden of proof is on the State, there was no error on this ground. Distnguishing Stuart v. State, 57 Texas Crim. Rep., 593; Castro v. State, 66 Texas Crim. Rep., 282.

**17.—Same—Standpoint of Defendant—Charge of Court.**

Where, upon trial of murder, the court in his charge on self-defense instructed the jury that the facts must be viewed from the standpoint of the defendant and no other, there was no error on this ground.

**18.—Same—Charge of Court—Threats.**

Where, upon trial of murder, the defendant alone testified to a threat by the deceased after the latter had knocked him down and was advancing on him, and the court presented this issue in the most favorable light to the defendant, there was no error.

**19.—Same—Charge of Court—Strength and Disposition of Parties.**

Where, upon trial of murder, the evidence showed the character and disposition of the deceased, and the relative strength of the parties, there was no error in submitting this issue in the court's charge on self-defense.

**20.—Same—Practice on Appeal—Former Decision.**

When the trial court follows the decision of the court in a given case on the second trial of that identical case, this court will not review the same question, unless it is shown that some injury resulted to the defendant in following the decision of this court.

Appeal from the Criminal District Court of Harris. Tried below before the Hon. C. W. Robinson.

Appeal from a conviction of manslaughter; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*E. T. Branch, S. B. Ehrenwerth,* for appellant.—Upon the question that the jury-wheel law is a special law, and therefore unconstitutional: Wagner v. Milwaukee Co., 88 N. W. Rep., 579; Village of Blommer v. Town of Bloomer, 107 N. W. Rep., 979; State v. Scott, 100 N. W. Rep., 812; Central Trust Co. v. Ry. Co., 80 Fed. Rep., 218; Herrmann v. State, 75 Mo., 346; Campbell v. City of Indianapolis, 57 N. E. Rep., 925; Blankenburg v. Black, 50 Atl., 198; Woodard v. Brien, 14 Lea, 520; State v. Schwab, 34 N. E. Rep., 736.

Upon question of district attorney attempting to get before the jury the facts of a previous difficulty between defendant and a third party: Streight v. State, 62 Texas Crim. Rep., 453, 138 S. W. Rep., 742; Kemper v. State, 62 Texas Crim. Rep., 1, 138 S. W. Rep., 1031; Paris v. State, 62 Texas Crim. Rep., 354, 137 S. W. Rep., 698; Harwell v. State, 62 Texas Crim. Rep., 171, 134 S. W. Rep., 701; Pace v. State, 58 Texas Crim. Rep., 90, 124 S. W. Rep., 951; Woodard v. State, 51 S. W. Rep., 1122; Gaines v. State, 38 Texas Crim. Rep., 201; Yancey v. State, 45 id., 366; Bearden v. State, 46 id., 147; Stewart v. State, 52 id., 282; Brown v. State, 54 id., 121; Tally v. State, 48 id., 475; Dimry v. State, 41 id., 272; Laubach v. State, 12 Texas Crim. App., 591; Greene v. State, 17 id., 407; Clark v. State, 23 id., 263; Rushing v. State, 62 Texas Crim. Rep., 309, 137 S. W. Rep., 372; Johnson v. State, 62 Texas Crim. Rep., 284, 138. S. W. Rep., 1021.

On the question of the court's charge on actual attack: Marnock v. State, 7 Texas Crim. App., 275; Phipps v. State, 34 Texas Crim. Rep., 564, 610; Poole v. State, 45 Texas Crim. Rep., 365; Johnson v. State, 138 S. W. Rep., 1021.

On the question of relative strength and disposition of parties: Hickey v. State, 45 Texas Crim. Rep., 297, s. c. 138 S. W. Rep., 1059; Lockhart v. State, 53 Texas Crim. Rep., 594; Vann v. State, 45 Texas Crim. Rep., 445; Anderson v. State, 144 S. W. Rep., 281.

On the question of grouping facts: Dodson v. State, 45 Texas Crim. Rep., 571; Nix v. State, id., 504; Willis v. State, 75 S. W. Rep., 790; Hightower v. State, 56 Texas Crim. Rep., 252.

On the question of the court's charge on manslaughter: Gallagher v. State, 55 Texas Crim. Rep., 52; Craft v. State, 57 id., 260; Fuller v. State, 54 id., 460.

On question of the standpoint of defendant: Simmons v. State, 55 Texas Crim. Rep., 449; Castro v. State, 66 Texas Crim. Rep., 282.

*C. E. Lane,* Assistant Attorney-General, and *Richard G. Maury,* for the State.—Cited cases in opinion.

HARPER, JUDGE.—Appellant was indicted for murder, tried and

convicted of the offense of manslaughter and his punishment assessed at five years confinement in the penitentiary.

This is the second appeal in this case, the opinion of this court on the former appeal being reported in 54 Texas Crim. Rep., 382.

1. Appellant in this case insists that the indictment charging him with murder in the first degree, and on the former trial having been convicted of murder in the second degree, which judgment was by this court reversed, he could not be again tried under that indictment. It is true appellant could not be again tried for murder in the first degree, but having been convicted on the former trial of murder in the second degree, and the verdict on his application having been set aside, he could again be tried on the indictment for murder in the second degree, and lesser offenses.

2. Appellant, by motion to quash the jury panel, and in his motion for new trial, again insists that the "jury wheel law" as passed by the Legislature in 1907 is unconstitutional. The law since the trial of this case by Act of the Legislature has been amended so as to meet all the objections made by appellant in his brief, and inasmuch as this question can not again arise we do not discuss nor pass thereon. In the former opinion of this court in this case the law was upheld, and it relating solely to a question of practice in the selection of a jury, and appellant does not state nor insist that other than a fair and impartial jury was obtained, in deference to the opinion of the court on the former appeal, we think it proper to follow that decision. If appellant showed or attempted to show he had been deprived of any right, or the jury, selected in the mode and manner it was, was biased or prejudiced against him, or that a different result might have been obtained had the jury been selected in another manner, we would investigate the question. Appellant has filed an able brief on the question of the constitutionality of the provisions of that law, but inasmuch as the trial court, in the selection of the jury, followed the decision of this court on the former appeal, we will not review the question in this case.

3. The facts are sufficiently stated in the opinion on the former appeal in this case and we do not deem it necessary to restate them, except in so far as it may be necessary to discuss the questions raised in the motion for new trial.

It appears that the district attorney, by questions propounded to the witness Frank Casey, sought to elicit that appellant, just a few moments prior to this difficulty, had a difficulty with Mr. Haney. The court sustained the objection of appellant, and the matter, as recited in the bill, presents no error.

4. It also appears that the State's attorney, after having been told certain pictures were not admissible in evidence, offered them in evidence, the objection of appellant being sustained. As the jury was not permitted to see the pictures, no harm could have resulted to appellant.

5. While defendant was on the witness stand testifying, on cross-examination, he was asked if he knew the State's witnesses Casey and Harmon, and if they were on friendly terms with him, to which defendant answered they were. The bias, prejudice or state of feelings of a witness towards a person on trial is always permitted to be shown. (Pope v. State, 65 Texas Crim. Rep., 51, 143 S. W. Rep., 611, and cases cited.)

6. Appellant testified that he was knocked down by deceased, and lost his watch, and he had been informed that Briggs Chumley had picked it up and brought it to the police station. Chief of Police Ray testified that Chumley had brought appellant's watch to him and delivered it. Appellant then sought to prove what Chumley said to Ray at the time he delivered the watch. This would be hearsay and not admissible.

7. It is also complained that Henry Harmon, who had been used as a witness by the State in making its case, after defendant had testified, in rebuttal was permitted to reiterate a portion of his testimony on a material point. This is hardly proper practice, but it is a matter within the discretion of the trial court, and only in a case of a gross abuse of this discretion would we be authorized to reverse a case on that account.

8. Appellant reserved a bill of exceptions to the following remarks of the district attorney: "In the closing argument of the district attorney he argued to the jury as follows: 'Gentlemen of the jury, after having done my duty, and after I impress upon you the facts in each case, in order that I may aid you, I hope that my right hand may shiver at my side before I will ever ask a jury to convict a man when the evidence does not show he is guilty, never, never. Gentlemen, gentlemen, I dismiss then whenever I have not evidence to convict in a case.'

"To which argument the defendant objected because it was improper for counsel to express his personal opinion and throw into the scales of justice arguments like that as his belief, to which the State's counsel then stated, 'I stated that unless I believed from the evidence in a particular case, . . .' to which defendant stated that was his objection, and thereupon, at the request of the district attorney, the court verbally instructed the jury not to consider his remarks and the State's counsel then turned and stated to the jury: 'I will repeat the statement as I thought I had made it, that never in any case will I submit to the jury a case where the evidence does not justify a conviction, never in any case will I submit it to the jury, unless the evidence justifies it. . . .' "

This presents no error as the court instructed the jury not to consider the first remarks made, and the latter remarks are unobjectionable.

9. In several paragraphs of the motion for a new trial appellant criticises the charge of the court on manslaughter. The charge is a

virtual copy of the charge given by the court and quoted in the former appeal of this case, with the addition there suggested, the court in this charge instructing the jury: "The following are deemed adequate causes, an assault and battery, that is a blow or lick inflicted by deceased causing pain to defendant." The charge as given was approved with that exception, and we do not deem it necessary to discuss this matter further. The jury only found appellant guilty of manslaughter on this trial, and certainly appellant suffered no injury in that respect.

10. On the question of self-defense the court instructed the jury: "A reasonable apprehension of death or great bodily harm will excuse a party in using all necessary force to protect his life or person, and it is not necessary that there should be actual danger, provided he acted upon a reasonable apprehension of danger as it appeared to him from his standpoint at the time, and in such case the party acting under such real or apparent danger is in no event bound to retreat in order to avoid the necessity of killing his assailant.

"If from the evidence you believe the defendant killed the said James S. Simpson, but further believe that at the time of so doing, the deceased had made or was making an attack on him which, from the manner and character of it and the relative strength of the parties and the defendant's knowledge of the character and disposition of the deceased, coupled with the threats of deceased at the time (if any), caused him to have a reasonable expectation or fear of death or serious bodily injury, and that acting under such reasonable expectation or fear, the defendant killed the deceased, then you should acquit him; and if the deceased was armed at the time he was killed and was making such attack on defendant, and if the weapon used by him and the manner of its use were such as were reasonably calculated to produce death or serious bodily harm, then the law presumes the deceased intended to murder or aimed to inflict serious bodily injury upon the defendant.

"In determining whether the defendant acted in what reasonably appeared to him to be his necessary self-defense, it is the duty of the jury to look at the transaction from what you believe from the evidence was the standpoint of the defendant at the time, and consider the same in the light of the facts and circumstances, as you believe they appeared to the defendant at the time, and not from any other standpoint; but it is for the jury to determine from the evidence what were the appearance to the defendant, and what the standpoint of the defendant was, and in what light he did in fact view the facts and circumstances at the time."

The only witness testifying who raised the issue of self-defense was defendant, and he testified: "Mr. Simpson (the deceased) knocked Chumley down, and I stepped up to him and said, 'Jim, don't do that,' and he hauled away and knocked me down; after hitting me and knocking me down, he advanced on me and throwed his hand behind him and said, 'I will just kill you, you son-of-a-bitch,' and as I was

getting up I fired one shot and jumped to my feet and fired two more shots.  I thought he was going to shoot—was going to kill me."

The charge above fully presented the issue of self-defense as made by this testimony, and as the State's testimony would show that the killing took place entirely under different conditions, the judgment is affirmed.

ON REHEARING.

June 19, 1912.

HARPER, JUDGE.—This case was affirmed at a former day of this term, and appellant has filed a motion for rehearing.  We do not like to write at length on a case of this character, but owing to the earnest insistance of appellant's counsel, in whom we have the greatest confidence as to his legal ability, we will again treat each ground in the motion, and more at length.

In the first bill it is shown that while the witness Frank Casey was testifying, the State propounded the following questions, and the following proceedings had:  "State whether or not there was a difficulty between Mr. Lee and Mr. Haney?  The Court:  I don't see how that is material at this stage of the game.

State:  The condition is, to show the condition of the defendant's mind and all the circumstances that led up to the tragedy; Mr. Casey has testified in this case three times before, once at an examining trial, and twice, on two occasions, and has on each time recited some incidents that connected him on down the line, and he is certainly now for some reason or the other forgetting about it, for some cause, in view of that situation, I— Court:  The proposition is, you want to show a difficulty between the defendant and some other person in the absence of deceased.  State:  They were all there together at the time. Court:  As far as the testimony is now, this witness says he don't know, I don't know only from what the witness says, I don't think at this time it is material.  State:  Mr. Casey has forgotten all about it since three days ago, about a week ago.  Court:  That is a matter the court can not regulate."

It will be seen that the district attorney stated he expected to prove that defendant was present and recited incidents that connected him on down the line with this difficulty; that the witness had so testified on former occasions.  That this was offered to show the condition of defendant's mind, and circumstances that led up to the tragedy in which deceased lost his life.  If the district attorney could have made this proof, he should have been permitted to do so, and the court erred in excluding it.  If the witness stated he did not remember, the district attorney should have been permitted to refresh his memory by showing him the testimony at the former trial, for no man can read the testimony of the witness without being convinced that on this trial he is antagonistic to the State.  And as the testimony was properly

admissible, a discussion about admitting it in the presence of the jury would not be error, but if error was committed, it was error against the State and not defendant. In Branch's Criminal Law, the rule is thus laid down: "When extraneous crime, or other transaction in res gestae, or tends to show intent when intent is an issue, or tends to connect the defendant with the offense for which he is on trial, it is admissible," citing Gilbraith v. State, 41 Texas, 567; Long v. State, 11 Texas Crim. App., 387; Davidson v. State, 12 Texas Crim. App., 215; McCall v. State, 14 Texas Crim. App., 362; Holmes v. State, 20 Texas Crim. App., 518; Harwell v. State, 22 Texas Crim. App., 252; Kelley v. State, 31 Texas Crim. Rep., 211; Hamilton v. State, 23 S. W. Rep., 683; Sisk v. State, 42 S. W. Rep., 986; Fielder v. State, 40 Texas Crim. Rep., 184; Stanfield v. State, 43 Texas Crim. Rep., 10; Glover v. State, 76 S. W. Rep., 465; Lynne v. State, 53 Texas Crim. Rep., 377; Penrice v. State, 105 S. W. Rep., 797; Bonners v. State, 35 S. W. Rep., 650; House v. State, 16 Texas Crim. App., 32.

One who reads the record in this case learns that appellant and deceased came in the saloon together a short time before the killing; both were policemen of the city of Houston; the witness says: "There were two other young men came in with them when they came in the saloon. I remember Haynie; he was with them when they came in, and they all had a drink together." It was a difficulty between appellant and Haynie that occurred just a few minutes prior to the killing of Simpson by appellant that the State desired to prove, and the district attorney says he desired to do so to prove circumstances that led up to the killing. If the circumstances (from the State's standpoint) of the difficulty between Haney and appellant led up to the killing of Simpson, it was admissible as res gestae of the transaction; as tending to show the motive of appellant; his state of mind, etc. The scene just prior to and just subsequent to a homicide may be depicted by witnesses that the jury may get a clear view of the transaction, and thus be enabled to more intelligently pass on the evidence, when such testimony sheds light on the transaction, or tends to show intent or motive.

Appellant insists that we erred in holding that there was no error in the charge on manslaughter, and refers us to the case of Smith v. State, decided on June 5, by this court. In that case we held that "wherever the statute makes a certain thing adequate cause, or certain conditions existed that is defined to be adequate cause, and the facts show the existence of it at the time of the difficulty, this must be submitted to the jury." This is a correct proposition of law, and if in this case this was not done, it would be error, but we could hardly see how it would be prejudicial error as the defendant was only found guilty of manslaughter. However, in this case, this was done. In this case what was relied on to reduce the offense to manslaughter? Defendant testified: "Just before the shooting (the deceased) knocked this fellow Chumley down, and I stepped up to him, and I said, Jim,

don't do that, and he hauled away and knocked me down; after hitting me and knocking me down, he advanced to me, and throwed his hand behind him and said, I will just kill you, you son-of-a-bitch, and as I was getting up I fired one shot and jumped to my feet and fired two more shots. The blow that he struck me, struck me right in the lower part of the breast bone and hurt me for a couple of days afterwards; when he struck me he hurt me; at the time he struck me it just knocked the breath out of me and dazed me." Upon that state of facts the court charged the jury, in charging the law of manslaughter: "The following are deemed adequate causes: An assault and battery, that is a blow or lick inflicted by the deceased upon defendant causing pain to defendant. And, any condition or circumstance which is capable of creating and does create sudden passion, such as anger, rage, sudden resentment or terror, rendering the mind incapable of cool reflection, whether accompanied by bodily pain or not, is deemed adequate cause. And where there are several causes to arouse passion although no one of them alone might constitute adequate cause, it is for you to determine whether or not all such causes combined, might be sufficient to do so. . . .

"Now, if you believe from the evidence beyond a reasonable doubt, that the defendant with a deadly weapon in a sudden passion arising from an adequate cause, *as the same has been hereinbefore explained,* and not in defense of himself against an unlawful attack producing a reasonable expectation or fear of death or serious bodily injury, with intent to kill, did, in the county of Harris and State of Texas, on the 4th day of March, 1908, as alleged, shoot and thereby kill said James S. Simpson as charged in the indictment, you will find the defendant guilty of manslaughter and assess his punishment at confinement in the penitentiary for not less than two nor more than five years."

How a more direct application of the law to the facts could be given we fail to see. The defendant testified to a blow causing pain. The statute says a blow causing pain shall be deemed adequate cause. The court tells the jury that a blow or lick inflicted by the deceased upon defendant causing pain to defendant would be adequate cause. Then tells the jury: "Now, if you believe from the evidence beyond a reasonable doubt that the defendant with a deadly weapon in a sudden passion, arising from an adequate cause, *as the same has been hereinbefore explained,* etc., you will find the defendant guilty of manslaughter." This is strictly within the rule of law as announced in the Smith case, and in accordance with all the decisions of this court. See Branch's Criminal Law, section 512, and cases there cited.

Appellant insists that the court erred in his charge on self-defense wherein he charged the jury: "That if deceased had attacked or was about to attack him," etc., claiming that the court should have charged that if deceased made a "demonstration from which it reasonably appeared to defendant that his life was in danger," etc., he should be

acquitted. The cases cited by appellant correctly state the law as applicable to the facts in those cases, but in this case appellant testifies deceased "hauled away and knocked him down, advanced toward him and throwed his hand behind him and said I will just kill you, you son-of-a-bitch." If this was not an "attack" instead of a "demonstration" we do not know the meaning of the word. If one knocks another down it seems to us he has made an attack, and when the court charged the jury that if deceased "had made an attack or was making an attack on him which, coupled with the threats of deceased at the time, caused him to have a reasonable apprehension of death or serious bodily injury, to acquit," it seems to us the court aptly applied the law to the evidence, and the criticism is hypercritical. Mr. Branch in his work on Criminal Law says it is not error to restrict the right of self-defense to an actual attack if the only theory of self-defense presented by the evidence is an actual attack, and the danger, if danger there was, was patent and real to defendant, citing Renfro v. State, 42 Texas Crim. Rep. 394, wherein it was held: "On a trial for murder where there was no testimony presenting other character of danger than an immediate intention on the part of deceased to do defendant bodily harm, and the court fully charged the law of self-defense as applicable to the facts, there was no error to refuse a special instruction on apparent danger." For other authorities see Branch's Criminal Law, section 446. In this case the court charged the jury if deceased had made an attack or was about to make an attack, and there was no evidence raising any other theory. Simmons v. State, 55 Texas Crim. Rep., 448, and cases cited.

The charge does not group any facts and require the jury to believe all of them, but applies the law to the facts as testified to by defendant. Defendant had testified that deceased knocked him down and said, "I will kill you, you son-of-a-bitch." The court tells the jury that if deceased had made an attack or was about to make an attack, coupled with the threats of deceased at the time, etc. This was a direct application of the law of defendant, whose testimony alone raised the issue of self-defense.

The next criticism is that the charge on self-defense shifts the burden of proof and places it on defendant. He cites us to the cases of Stuart v. State, 57 Texas Crim. Rep., 593, and Castro v. State, 66 Texas Crim. Rep., 282, 146 S. W. Rep., 554. We do not think the charge in this case is subject to the criticism, for in addition to the charge on presumption of innocence and reasonable doubt, the court, immediately following and virtually as a part of the law of self-defense, instructed the jury "in all criminal cases the burden of proof is on the State." In the Castro and Stuart cases this part of the charge seems not to have been given, and the Stuart case holds, even with this omitted, that in the absence of a requested charge no reversible error would be presented. As does the Simmons case, 55 Texas Crim. Rep., 448. In speaking of a charge of this character Judge Willson, in the case of

Powell v. State, 28 Texas Crim. App., 398, said: "With respect to the charge on threats and self-defense, the objection is urged that it requires the jury to *believe* that the facts existed which constituted self-defense before they could acquit defendant, whereas the law is that if they entertained a reasonable doubt of the existence of such facts they should acquit him. In this case the court charged the rule of reasonable doubt generally, making it applicable to the whole case, and under repeated decisions of this court this was sufficient." Where the court in connection with the charge on self-defense instructs the jury specifically that in all criminal cases the burden of proof is on the State, it is inconceivable that the jury should have been misled, and the burden of proof is not shifted. Had the court so instructed the jury in the Stuart and Castro cases, as well as giving the charge on reasonable doubt on the whole case, it would not and could not have been said that the burden of proof was shifted. See also McCullough v. State, 23 Texas Crim. App., 636; Edens v. State, 41 Texas Crim. Rep., 524, and cases cited in Overcash v. State, decided at this term of court.

The charge is not subject to the criticism that it may have caused the jury to infer that they should judge of the transaction from what the after developments disclosed to be the real facts. The charge is unlike that cited in the Simmons case, 55 Texas Crim. Rep., 449, in that it adds to that charge "and consider the same in the light of the facts and circumstances as they appeared to the defendant at the time and not from any other standpoint; and it was for the jury to determine what were the appearances to defendant, and in what light he did in fact view the facts and circumstances at the time." This latter clause shows that the facts must be viewed from the standpoint at the very time of the homicide as it appeared to defendant at the time of the homicide and from no other standpoint. No man could draw any other conclusion.

The criticism that the court erred in charging on "threats" in that it was a disputed fact is rather hypercritical. The whole issue of self-defense was a contested issue, and the only witness that testifies to facts raising the issue of self-defense, in the same breath that he tells of defendant knocking him down and advancing on him, also tells of the threat. If a jury believed one they believed all, for the same man that testifies to one testifies to the other as a part of the same transaction, and there could be no question if one was true the other was not also true. The way the court charged in regard to the threat was favorable to defendant, in that the witness said he knocked him down, advanced on him, put his hand to his hip pocket and said, "I will just kill you, you God damn son-of-a-bitch." No one else saw the deceased knock the defendant down, although there were several in the room, and no one heard this remark, but when the witnesses all testify that deceased had no pistol at this time, it can be seen that

presenting the issue as he did, the court was presenting the matter in most favorable light for defendant.

The only other criticism is that the court erred in instructing the jury in the charge on self-defense, that they might consider the relative strength and size of the parties and the defendant's knowledge of the character and disposition of the deceased, in viewing the matter from defendant's standpoint. In some cases this charge has been held to be error, and in others that it was proper to be given depending on the facts in each case. In this case certainly it could not be harmful to defendant. He testified he had known deceased for a number of years; that they had been out at a dance all the night before; that deceased was drinking and quarrelsome; had been in trouble at the dance, and had had a fuss there and was in a very bad humor; that he saw him pull his pistol out and strike the counter at two different times shortly before the shooting; that he saw him knock Chumley down, and then had knocked him down and came towards him threatening to kill him. Taking this evidence into consideration in telling the jury that they might take into consideration the character and disposition of the deceased, and the relative strength of the parties in passing on defendant's right of self-defense, it certainly presents no ground for complaint on defendant's part.

The only other contention of appellant is that we should have taken up the question of the constitutionality of the jury wheel law and passed on it again. In this case, on the former appeal, this court upheld the constitutionality of the law, and the trial court did right in following that decision in again trying this case. Appellant apparently misunderstood or misconstrued what we said on this question. We were not passing on the question of whether or not a jury selected in any manner other than that provided by law, would be a legal jury. Nothing was further from our thought. What we intended to say was that when the trial court followed the decision of this court in a given case on the second trial of that identical case, we would not review the same question again in that case, and overrule the former decision, unless it was shown that some injury resulted to the defendant by the court in following the decision of this court. Were the rule otherwise trial courts would in a great measure be at sea, and would feel inclined and be authorized to give but little weight to the decisions of the court. However, if it appeared that the decision was wrong, and a substantial injury had been done a citizen of this State by such decision, it would be our duty and pleasure to remedy that wrong. However, we might add if we are to follow the decisions of the Supreme Court of this State in the case of Beyman v. Black, 47 Texas, 558, the decision of the former appeals on this question would be sustained.

As appellant's attorney has so ably and earnestly presented the several questions, we have given them more than usual consideration, and have rewritten on nearly all of them, but there being no error that

could or should cause a reversal of the case, the motion for rehearing is overruled.

*Overruled.*

Davidson, Presiding Judge, not sitting.