## A. F. Rhodes v. The State.

No. 11433.   Delivered March 14, 1928.
Rehearing denied June 23, 1928.

The opinion states the case.

*Stinson, Hair, Brooks & Duke* of Abiline for appellant.

*A. A. Dawson* of Canton, State's Attorney, for the State.

CHRISTIAN, JUDGE.—The offense is murder; the punishment confinement in the penitentiary for twenty years.

Appellant was formerly tried in Stonewall County where the offense was committed, his punishment being assessed at life imprisonment. Upon appeal to this court the judgment of the trial court was reversed (Rhodes v. State, 294 S. W. 212). The present trial was had in Kent County on a change of venue.

Appellant was city marshal of the town of Aspermont. Deceased, a young man about 18 years of age, had been warned by appellant against speeding his automobile, the warning having been given at the instance of the city authorities. After such warning had been given, deceased adopted an air of insolence when he came in contact with appellant and indulged in conduct and words toward appellant that greatly provoked him. Appellant had been advised to watch deceased as he was a dangerous man. On one occasion, according to appellant's testimony, he had attempted to arrest deceased for speeding and deceased had driven his car rapidly down the road. Appellant fired his pistol in the air in the hope of stopping deceased. Deceased thereupon fired his pistol at appellant. On the day of the homicide, according to the testimony of appellant's son, deceased struck appellant's son with a lariat and threw rocks or clods of dirt at him, striking him on the hip. Appellant's son reported the affair to appellant and he thereupon arrested deceased and started to take him to the courthouse. At the time of the arrest, deceased had a lariat on his arm and an open pocket knife in his hand.

It seems to have been the theory of the state that appellant was impelled by the antecedent taunts and conduct of deceased to make an illegal arrest of deceased for the purpose of killing him. In support of such theory, testimony was introduced to the effect that appellant had theretofore threatened to kill deceased the first time he crossed his, appellant's, path and that on the occasion of the homicide appellant ordered deceased to drop his knife, which order the deceased obeyed, cursed deceased, told him he was going to kill him, and fired three shots which resulted in his death.

Appellant's testimony supported the theory that after he had arrested deceased, deceased made an attack upon him with a knife and that believing that his life was in danger he shot and killed deceased.

The court gave instructions covering the law of murder, manslaughter and self-defense. In applying the law of self-defense to the facts the jury were charged as follows:

"You are charged that if you believe from the evidence that the defendant, A. F. Rhodes, and the deceased, George Smith, were on or near the sidewalk near the front of the burned building formerly

occupied by the Senter Garage in the town of Aspermont, Stonewall County, Texas, on or about the 15th day of September, 1926, and the defendant believed at the time that the deceased, George Smith, was advancing upon him, toward him, or was attempting to advance toward him, with a knife in his hand, or made a motion as if to advance toward defendant with a knife in his hand, or made a motion to strike defendant with a knife, and you further believe by reason of said acts, if any, on the part of George Smith, when taken alone or in connection with all or any of the relevant facts and circumstances in evidence, and taken in connection with the relative size and strength of the defendant and deceased, there were created in the mind of the defendant, A. F. Rhodes, a reasonable expectation or fear of death or serious bodily injury at the hands of the deceased, George Smith, viewed from the standpoint of the defendant at the time, and you further believe that the defendant, A. F. Rhodes, acting upon such reasonable expectation or fear of death or serious bodily injury at the hands of the deceased, shot and thereby killed the deceased, or if you have a reasonable doubt thereof, then you will find the defendant not guilty."

Appellant timely excepted to the foregoing charge on the ground that the court should have gone further an instructed the jury that if viewed from the appellant's standpoint it appeared from the acts, words and conduct of the deceased that he was in danger of death or serious bodily injury at the hands of deceased he should be acquitted. In other words, appellant's exception was addressed to the failure of the court to refer to both the acts and words of the deceased.

Appellant testified that immediately prior to the homicide he was begging deceased to go with him to the courthouse, and that deceased said: "G—— D—— you, why don't you come up and take hold of me and make me go"; that he, appellant, then pulled his gun out of his pocket and that deceased "made like he was going to jump at me and stick this knife in me." Appellant further testified that he fired the gun first in an effort to quiet deceased, but that deceased came at him with "all vengeance with his knife"; that thinking deceased was trying to kill him he shot and killed deceased.

It is noted that in connection with his reference to the acts of deceased the court instructed the jury, in substance, that such acts should be taken alone or in connection with all or any of the relevant facts and circumstances in evidence in determining whether viewed from the standpoint of appellant there was created in his mind at the time of the homicide a reasonable expectation or fear of death

or serious bodily injury at the hands of the deceased. The charge should refer to both the acts and the words of the deceased where the facts show that the words as well as the acts may have produced in the mind of the accused fear of death or serious bodily injury at the hands of the deceased. See Article 1222 P. C. In the case of Dugan v. State, 216 S. W. 161, it was held reversible error under the facts of that case to fail to refer in the charge to the words of the deceased and to limit the jury's consideration to his acts. See also Riordan v. State, 275 S. W. 1017. It appears that in the Dugan case the jury's consideration in determining whether or not appellant's conduct in shooting deceased was justified was restricted solely to the acts of the deceased. In the present case, the omission complained of was not reversible error. An examination of the entire record in the light of the charge convinces us that the omission of the court to specifically use the term "words" could not have injured the rights of appellant. Under the provisions of Article 666, we are not authorized to reverse a case upon an error in the charge unless it appears from the record that such error was "calculated to injure the rights of defendant, or unless it appears from the record that the defendant has not had a fair and impartial trial."

Bills of exception Numbers 1 to 4 inclusive are concerned with the refusal of the trial court to permit appellant to prove that certain members of the family of deceased were violent and dangerous men and that appellant had been informed of such fact. We know of no authority supporting the proposition that evidence of the violent and dangerous character of members of the family of deceased who are not in any wise connected with the homicide is relevant on the issue of self-defense. Hearing on the question we quote from Corpus Juris, Vol. 30, p. 235, as follows:

"It is not permissible to show the reputation of deceased's family for violence."

The text is supported by a decision from the Supreme Court of Louisiana. State v. Hamilton, 49 Southern 1004. We quote from Hamilton, supra, as follows:

"It appears that the witness Borland had been permitted to testify to the bad reputation of the deceased for violence, and had obtained the benefit of having that testimony go to the jury. Counsel for the state say: 'That was enough. The rules of evidence did not permit the defense to show the reputation of the family of the deceased for violence, fighting, etc., especially where it is not shown that they had anything to do with the homicide. Even if admitted it would

have added nothing as his own reputation had been sworn to.' * * * We think that the ruling of the trial judge was correct."

In the instant case appellant was permitted to show that he had been informed that deceased bore a reputation for being a dangerous man. Appellant had the benefit of this testimony and was not entitled to have the rule under which it was admitted extended.

By bill of exception Number 5 it is made to appear that appellant testified in his own behalf that he did not have a warrant at the time he arrested deceased as he did not know that he had to have one; that he understood that a peace officer could arrest a person without a warrant whether the misdemeanor was committed in his presence or not; that appellant was then asked by the state, in substance, if the sheriff of Stonewall County had not told him, appellant, that he could not arrest a man without a warrant; that appellant denied such conversation with the sheriff; that thereupon the state placed the sheriff on the witness stand who testified that the conversation had occurred and that he had told appellant that he could not arrest a man without a warrant unless he saw him commit the offense. Appellant objected to the sheriff's testimony on the ground that it went to impeach, contradict and discredit him in an immaterial and collateral matter. We are unable to agree with appellant that the testimony complained of was immaterial and collateral. It was the state's theory that the arrest of deceased by appellant was made by appellant for the purpose of killing deceased. If, from the advice he had received from the sheriff, appellant had believed he had no right to make the arrest, the fact that he had received such advice from the chief law enforcement officer of the county would have had material bearing on the question of appellant's motive in making the arrest, and would have tended to support the theory of the state that appellant's purpose was to arrest deceased and kill him. Hence, in our opinion, the testimony was relevant and material on the question of the state of appellant's mind at the time of the homicide. Such being the case, appellant's objection was not well taken.

We have carefully examined every contention made by appellant and are of the opinion that the record fails to reflect reversible error.

The judgment is affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

## ON MOTION FOR REHEARING.

LATTIMORE, JUDGE.—This motion is based on the sole claim that we were wrong in not reversing this case for the failure of the court to specifically mention "words and conduct" in the charge on self-defense, set out and discussed in our original opinion. Attention is called to Art. 1222 P. C., wherein in setting out circumstances justifying homicide it is said:

"It must reasonably appear by the acts or by words coupled with the acts of the person killed that it was the purpose and intent of such person to commit one of the offenses above named."

Appellant cites several authorities as supporting his claim that the omission from this charge of the pointed use of the expression "words and conduct" should be cause for reversal. Each authority has been examined, but none are believed to justify the position taken. In Briggs v. State, 255 S. W. 410, the jury's consideration of what might give rise to the right of self-defense was limited by the language of the charge to "acts and conduct," and we held it wrong for the charge to exclude from their consideration the words of the deceased as well as his acts and conduct. None of the other cases cited seem to be in point. In the instant case there was no sort of exclusion in the charge given; on the contrary, as appears from the quotation of that part of the charge in our former opinion, the jury were bidden by the charge to decide from the acts alone of the deceased, or from same in connection with all or any of the relevant facts before them, whether there was created in the mind of appellant a reasonable expectation or fear of death or serious bodily injury at the hands of deceased. While not in the exact words of Art. 1222, supra, this affirmatively told the jury to consider all the evidence before them, and excluded nothing in determining the issue of self-defense.

Being unable to agree with appellant's complaint, the motion for rehearing is overruled.

*Overruled.*