## W. H. STROUD v. THE STATE.

No. 14452.   Delivered December 13, 1931.
Rehearing Granted February 10, 1932.

468

The opinion states the case.

*Williams & Bell,* of Childress, and *Storey, Leak & Storey,* of Vernon, for appellant.

On the question that the charge erroneously limited the right of self-defense to the acts alone of the deceased and that it should have authorized the jury to take into consideration his *words* and *acts,* cited: Perkins v. State, 8 S. W. (2d) 122; Dugan v. State, 216 S. W., 161; Andrus v. State, 165 S. W., 190; Sanchez, v. State, 149 S. W., 124.

On the question of appellant's right to defend himself against a milder attack than one to produce death or serious bodily injury, cited: Hancock v. State, 281 S. W., 859; Holcomb v. State, 265 S. W., 1039; Schultz v. State, 257 S. W., 59.

· On the right of appellant, who had possession of the two checks representing a bid, to use such force as was necessary to retain them as against the purpose of the deceased to take them, cited: Pryce v. State, 113 S. W., 938; Gilliam v. State, 272 S. W., 154; Hopkins v. State, 53 S. W., 619; Sims v. State, 44 S. W., 522; Lassiter v. State, 163 S. W., 711; Yarbrough v. State, 147 S. W., 272.

On the alleged error in charging upon the intent from the instrument used and the manner of its use, cited: Burnet v. State, 79 S. W., 551; Dugan v. State, 216 S. W., 161. It is contended that it was expressly so held in the case of Davis v. State, 10 S. W. (2d) 116. In this case appellant contends that article 1261, P. C., 1925, was repealed by the Acts of the 40th Legislature, chap. 274.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

On appellant's complaint that the court's charge on self-defense was too restrictive, in that it did not recognize the right of appellant to defend not only against the acts of the deceased but against the words, or both the acts and words, the state contended that the situation presented by the record made it manifest that the defense was based simply upon the acts of the deceased and that the language used by him did not in any way affect the situation.

On the question of appellant's right to defend himself against a lesser attack than one producing a reasonable expectation and fear of death or serious bodily injury, state cited Holland v. State, 39 S. W. (2d) 35.

CALHOUN, JUDGE.—Appellant was convicted of murder; his punishment was assessed at five years in the penitentiary.

This is the second appeal of this case; the former appeal is reported in 113 Texas Crim. Rep., 621, 24 S. W. (2d) 52.

The facts in this case are not materially different from those upon the former appeal which were set out at some length in that case, except in this case it appears from the record that the state offered the testimony of the sister of the deceased in regard to the dying declaration made by the deceased.

The testimony in brief shows that the altercation which resulted in the death of the deceased, Lawson, grew out of an election bet between appellant and deceased. Two checks in the sum of $50 each had been left with the appellant, Stroud, to await the result of the election; one of them was signed by the appellant and the other by the deceased. It appeared that the appellant and deceased had not met until the day of the difficulty, the Saturday following the day on which the bet was made, and it seems that the appellant had kept both checks in his insurance office to abide the result of the election. A misunderstanding had occurred between them as to whether said bet had been called off or not. The substance of appellant's testimony was that while the bet had been made that same had been called off prior to the election; that at the time of the difficulty deceased demanded payment and told him he was "going to whip hell out of him if he did not turn over his check"; that deceased told him to pull off his glasses and he did so, whereupon the deceased struck him in the ear with a knife, blooding him; that deceased continued his attack with his knife, whereupon appellant struck deceased one time with a knife somewhere in the body. He further testified that he only hit the deceased one lick and that because he was afraid deceased was going to kill him; that he did this to protect himself and did not intend to kill deceased. It was shown that the deceased died from a knife wound in his chest.

The court charged on murder, aggravated assault, circumstantial evidence, and on self-defense. The dying declaration of the deceased was offered in evidence and to lay a predicate for the introduction of same, the physician who attended the deceased after the fatal difficulty and the sister of deceased were introduced as witnesses. The dying declaration of the deceased, which contains the chief incriminative facts relied on by the state for a conviction, was as follows:

"I, Wayne Lawson, being of sound mind, and conscious and clear of recollection, do make this voluntary statement to O. O. Franklin, District Attorney, in the presence of the witnesses whose names are hereto affixed,

without any questions being asked me concerning the matter being related, and realizing that I am mortally wounded and there is no hope for my recovery and being conscious of approaching death:

"W. H. Stroud and I had put up a check each, in the presence of Arthur Miller and Mr. Crain. We put up the checks as a bet on an election. We put the checks in a sealed lock box. The day after the election I went to Odell to get the checks. I told him I wanted those checks and he said no, he would not give me one of them; he said he would give me back my check. I told him it was a fair and square bet and he should give me both of them. Stroud said no, he had called the bet off after the election. Stroud and I were reading the election returns and he said he had called his part of the bet off and I told him no, we had the bet up. I told Stroud he could either pay that check or we would see who was the best man. He said, 'what are you wainting on?' I told him to take off his glasses, and he reached up and got his glasses and said, 'they are already off.' And he cut me at the same time. I did not realize I was cut and I waded into him and hit him four or five licks and then saw the blood running off me. I did not have a weapon of any kind and I struck Stroud with my fist only. I had a pocket knife which was in my pocket. I did not at any time get my knife out."

                                        X his mark
                        "(Signed)   Wayne Lawson.
"Witnesses:
"O. O. Franklin
"Miss Vivian Case
"Thomas King."

Appellant questions the admissibility of the dying declaration, claiming that no proper predicate had been laid and that such dying declaration and declarations contained inadmissible matters because it was not shown that the statement was voluntarily made and that at the time it was signed the deceased was conscious of approaching death and had no hope of recovery; because that part of the statement made by the district attorney constituting the first page, which was represented by the district attorney to the deceased as being merely a matter of form, was not the statement of the deceased, but that of a third party or person and not the voluntary statement of deceased, but was made through persuasion and dictation of other persons; because the deceased was not conscious of impending death and without hope of recovery.

.  The court overruled said objection and permitted the statement and declarations to be introduced in evidence, to which action the appellant then and there in open court excepted.

.The doctor who was attending deceased and who was present at the time of the taking of this statement testified that the statement was made

between 9 and 11 o'clock at night; that deceased's general condition was very bad at the time; that he, the doctor, didn't think there was any chance for recovery of the deceased at that time; that before the statement was made the district attorney, who was present at the time and who took the statement, told the deceased he was going to die; that he thought deceased was sane at the time he made the statement and that he was conscious; when he was awake, he was in a kind of dozing state and talked rationally at the time he made the statement; that he didn't remember that deceased said anything about wanting to make a statement at the time the statement was made; that at no time did the district attorney tell the deceased what to say, he didn't say anything to him about what to say, but at times would have to tell the deceased where he stopped off with the statement he was making. He identified the statement shown him as the one made by the deceased on that occasion and that he signed the same as a witness.

The sister of the deceased testified that on the day of the night that the statement of deceased was taken, from 2 to 4 o'clock in the afternoon she had a conversation with the deceased; that deceased motioned for her to come to his bed and when she walked over to his bed she asked the deceased, "Wayne, how are you feeling;" that he said, "Awful bad, Hass. I am a mighty sick man. I am afraid I won't make the grade"; that she was present at the time the statement of the deceased was taken and at that time the deceased was sane and fully conscious and that the only change she saw in him at that time was that he grew weaker and was very weak as compared with his normal condition, but that she couldn't see any difference with reference to his weakness at that time and at the time she had the talk with him. She testified that the first page of the statement and the first two lines of the second page were written by Mr. Franklin, the district attorney, before he started taking the remainder of the statement from the deceased; that after he wrote out the first page and the first two lines of the second page he read it over to the deceased and told him to go ahead with his statement, and deceased started on; that as deceased would talk, the district attorney would take down his statement just as he gave it and there was only one stop, she believed, in the entire statement; that the district attorney ran out of paper and the nurse had to get some paper, but that the deceased stopped several times to rest and after he had rested a few minutes the district attorny would say, "Is that all," and sometimes he would say, "Go on"; that when deceased finished making the statement he just said, "That is all." The district attorney then read the statement over to the deceased and asked him if that was correct and deceased told him that it was correct and that was all. That before the witnesses signed the statement the district attorney asked the deceased if he was able to make his signature or if he wanted to sign his name or make his mark and deceased said

he would have to make his mark; that the district attorney then signed the deceased's name and the deceased made his mark and then Miss Case, Dr. King, and Mr. Franklin signed as witnesses.

There is no evidence in the record that the statement made by the deceased was made in answer to questions, nor is there any evidence showing that whatever interrogatories might have been propounded to the deceased were calculated to lead the deceased to make any particular statement.

It is no objection to a dying declaration, otherwise admissible, that the same was made in answer to questions, if the interrogatories were not calculated to lead the deceased to make any particular statement. Hunnicutt v. State, 18 Texas App., 516, 51 Am. Rep., 330; Pierson v. State, 18 Texas App., 562; White v. State, 30 Texas Crim. Rep., 655, 18 S. W., 462; Taylor v. State, 38 Texas Crim. Rep., 563, 43 S. W., 1019; Brande v. State (Texas Crim. App.), 45 S. W., 17; Grubb v. State, 43 Texas Crim. Rep., 75, 63 S. W., 314; Hunter v. State, 59 Texas Crim. Rep., 455, 129 S. W., 125; Ward v. State, 70 Texas Crim. Rep., 393, 159 S. W., 277; Beckham v. State, 76 Texas Crim. Rep., 520, 176 S. W., 565.

It is shown by the record that that part of the statement made by the deceased which was made by the district attorney before the deceased began his statement was read over to the deceased before his statement was taken. Judge Morrow, on motion for rehearing in the case of Downing v. State, 113 Texas Crim. Rep., 235, 20 S. W. (2d) 202, 204, in speaking of the admissibility of a dying declaration, used the following language: "As a predicate for receiving in evidence a dying declaration, it is not essential that the declarant should state in specific terms that he is conscious of impending death. It is enough if it satisfactorily appears in any mode that they were made under that sanction, whether it be proved by the express language of the declarant, or be inferred from his evident danger, or the opinions of the medical or other attendants stated to him, or from his conduct or other circumstances of the case, all of which are resorted to in order to ascertain the state of deceased's mind," citing in support thereof, Hunnicutt v. State, 18 Texas App., 499; also collation of authorities in Vernon's Tex. C. C. P., vol. 2, p. 805.

In the case of Morgan v. State, 54 Texas Crim. Rep., 542, 113 S. W., 934, Judge Ramsay used the following language:

"The rule is universal that, before the dying declarations can be admitted in evidence, it is essential, and is a preliminary fact to be proved by the party offering them in evidence, that they were made under a sense of impending death; but Mr. Greenleaf says (section 158) it is not necessary that they should be stated at the time to be so made. It is enough if it satisfactorily appears, in any mode, that they were made under that sanction, whether it be directly proved by the express lan-

guage of the declarant, or be inferred from his evident danger, or the opinions of the medical or other attendants, stated to him, or from his conduct, or other circumstances of the case, all of which are resorted to, in order to ascertain the state of the declarant's mind."

It appears from the testimony in this case that the district attorney before making this statement told the deceased that he could not live and that immediately following this and without any dissent or suggestion that he believed himself to be other than in a dying condition, he made the statement offered in evidence. As tested by the above rules of law as to the admissibility of the dying declarations, we think that sufficient predicate was laid for the introduction of said declaration by the deceased.

The court also instructed the jury that they would not consider such statement unless they first find that same was made by the deceased and after being written was read over to the deceased and signed by him, or under his direction, in the presence of the witnesses whose names are attached thereto, and not then unless they believed from the evidence that deceased was of sane mind and was conscious of approaching death and believed there was no hope of his recovery, and that such statement was made voluntarily and not in response to interrogatories calculated to lead the deceased to make any particular statement; and that if at the time of making same deceased was not of sound mind or was not conscious of approaching death and believed there was no hope for his recovery, or that such statement was not voluntarily made, they would not consider such statement for any purpose.

By bill of exception No. 2, appellant questions the admissibility of the following portions of such dying declaration claiming that said portions were inadmissible matters. The part complained of was as follows: "W. H. Stroud and I had put up a check each. We put up the checks as a bet on an election and we put the checks in a sealed lock box. The day after the election I went to Odell to get the checks. Stroud had said that he was not going to pay the bet and I went back there Saturday morning to talk with Stroud. Stroud and I were reading the election returns and he said that he had called his part of the bet off and I told him. 'No, we had the bet up.' "

The latter part of said statement complained of was said at the time the difficulty occurred, and was clearly part of the res gestae. It is shown by the qualification to said bill of exception that that part of the dying declaration "Stroud had said he wasn't going to pay the bet" was excluded at the time the instrument was offeerd in evidence. The evidence in this case shows that the appellant in effect testified to the same facts which were asked to be excluded by the appellant. If the question of the admissibility of this testimony were to be tested alone by the bill of exception and passed on as there stated, it can be said not to be a statement of the circumstances of the death, yet when taken into connection

with the rest of the statement, we are of the opinion that the part of the statement which is objected to is so intimately interwoven with the thread of the narrative that it could not be separated without marring, if not destroying, the sense. We are therefore unable to say that the error, if any, complained of, under the circumstances of this case was of such a material nature that it would call for a reversal of this case. See West v. State, 7 Texas App., 156; Bennett v. State (Texas Crim. App.), 75 S. W., 317.

Appellant objected and excepted to paragraph 15 of the court's charge upon the grounds that it fails to apply the law to the facts of the case in that the court failed to instruct the jury, in passing upon the issue of whether or not the defendant had a reasonable expectation or fear of death or serious bodily injury, that they should take into consideration the words and acts of the deceased at the time and the words coupled with the acts. No special charge was requested upon said issue.

In the case of Rhodes v. State, 110 Texas Crim. Rep., 353, 7 S. W. (2d) 569, where a somewhat similar charge was given, the appellant testified that immediately prior to the homicide he was begging the deceased to go with him to the court house and that deceased said, "G— d— you, why don't you come up and take hold of me and make me go," and that appellant then pulled his pistol out of his pocket and deceased made like he was going to jump at him and stick his knife in him and thinking deceased was trying to kill him, he shot and killed the deceased. The court in said case instructed the jury in substance that such acts should be taken alone or in connection with all other or any other relevant facts or circumstances in evidence in determining whether viewed from the standpoint of the appellant there was created in his mind at the time of the homicide a reasonable expectation or fear of death or serious bodily injury at the hands of the deceased. The appellant excepted to the charge on the ground of the failure of the court to refer to both acts and words of the deceased. It was held in that case that the charge should have referred to both acts and words of the deceased where the facts showed that the words as well as the acts may have produced in the mind of the accused fear of death or serious bodily injury at the hands of the deceased. Citing article 1222, P. C., and authorities. But, it was held under the facts of that case that the omission of the court in his charge to specifically use the term "words" could not have injured the rights of the appellant, under the provisions of article 666, C. C. P. On motion for rehearing in the case, Judge Lattimore, after citing article 1222, Penal Code, and discussing cases cited by appellant in support of the claim that omission from the charge of the pointed use of the expression "words and conduct" should be cause for reversal, used the following language: "In the instant case there was no sort of exclusion in the charge given; on the contrary, as appears from the quotation of that

part of the charge in our former opinion, the jury were bidden by the charge to decide from the acts alone of the deceased, or from same in connection with all or any of the relevant facts before them, whether there was created in the mind of appellant a reasonable expectation or fear of death or serious bodily injury at the hands of deceased. While not in the exact words of article 1222, supra, this affirmatively told the jury to consider all the evidence before them, and excluded nothing in determining the issue of self-defense," and overruled the motion for rehearing.

It has been held reversible error under the facts of a number of cases by this court that the failure to refer in the charge to the words of the deceased at the time of the homicide and to limit the jury's consideration of acts alone called for reversal of the case, but considering article 666, C. C. P., it must be determined more or less by the charge of the court itself as to whether it was such error as would call for reversal of the case. In this case, the appellant testified that when the deceased demanded payment of the bet he stated that he was going to whip hell out of him if he didn't turn over his check. The court charged in paragraph 15 (the paragraph complained of) of his charge, in substance, that if the jury believed beyond a reasonable doubt that the death of Wayne Lawson was caused by the defendant cutting the said Wayne Lawson with a knife, at the time and place alleged in the indictment, but you further find that at the time, the deceased, Wayne Lawson, had made an attack upon the defendant, or that at the time it reasonably appeared to the defendant that the deceased had made or was making or was about to make an attack upon him, the defendant, which from the manner and character of it, and from all the facts and existing circumstances in evidence, caused him, the defendant, when viewing the situation at the time from his standpoint, to have a reasonable expectation or fear of death or serious bodily injury, and that acting upon such reasonable expectation or fear, if you find any such there was, even though no danger in fact existed, the defendant killed the deceased, or if you have a reasonable doubt as to these facts, then you will give him the benefit of such doubt and acquit him of the offense of murder.

Considering the whole of the paragraph complained of, we do not believe that the omission complained of constitutes such error as calls for a reversal. There was no exclusion of the words of the deceased in said charge, but the jury were told that in connection with any attack that the deceased had made or was making or was about to make on the appellant, that they should take into consideration all the facts and existing circumstances in evidence. Under the provision of article 666, C. C. P., we are not authorized to reverse a case upon an error in the charge unless it appears from the record that such error was calculated to injure the rights of defendant, or unless it appears from the record that the

defendant has not had a fair and impartial trial.

There are numerous exceptions taken to the court's charge in this case. An examination of the charge leads us to believe that all error pointed out in the opinion on the former appeal as to the charge of the court have either been eliminated or corrected in accordanec with that opinion. The contentions of the appellant not herein discussed have been examined and we are of the opinion that they fail to show reversible error.

No reversible error appearing, the judgment is affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

MORROW, PRESIDING JUDGE.—The appellant's testimony, as understood, is summarized as follows: Lawson demanded both checks. Stroud said that the bet had been withdrawn. Lawson said: "Yes, but I thought you were joking," and said; "I want both of those checks or I am going to whip hell out of you." Stroud testified: "Lawson told me to put up my glasses, and I took them off. He then put his hat in the car. I don't remember any further conversation after that. When he put his hat in his car, he turned around and hit me with a knife in the ear."

Appellant said that the first lick that was passed in the encounter was that in which he was struck in the ear with a knife. From then on the fight proceeded until the deceased was killed. In the course of his testimony the appellant said that he apprehended danger of getting hurt when the first lick was struck by Lawson. He said further: "I didn't think there was any danger when he told me he was going to whip hell out of me if I didn't give him those two checks."

As interpreted, subdivision 1, article 1222, P. C., 1925, does not render imperative a charge adverting to the words as well as acts in specific terms in every case. This is illustrated in many of the cases to which the appellant refers in his motion for rehearing, notably, Rhodes v. State, 110 Texas Crim. Rep., 353, 7 S. W. (2d) 569, both in the original opinion and that on motion for rehearing; also Dugan v. State, 86 Texas Crim. Rep., 130, 216 S. W., 161.

In the present case, under the facts presented from the appellant's testimony and from the whole record, it seems clear that in failing to refer in specific terms to the words which were used by the deceased immediately preceding the conflict, the learned trial judge committed no error. The charge is not regarded as restricting to the acts of deceased the right of self-defense, but the language used was broad enough to embrace the words of the deceased, as is illustrated by the following quotation from the charge: "* * * or that at the time it reasonably appeared

to the defendant that the deceased had made or was making or was about to make an attack upon him, the defendant, which from the manner and character of it, and from all the facts and existing circumstances, in evidence, caused him, the defendant, to have a reasonable expectation of fear of death or serious bodily injury."

It may be added, however, that the appellant's claim of self-defense appears from his testimony to have been founded upon the *act* of the deceased and not upon his words. As stated above, appellant disclaimed the thought that his action was because of the words of the deceased, and founded it upon an actual attack by the deceased.

Quotation of abstract statements from the opinions in Lundy's case, 59 Texas Crim. Rep., 131, 127 S. W., 1032, 1034; Dugan's case, 86 Texas Crim. Rep., 130, 216 S. W., 161, and others, must of necessity be considered in connection with the facts of the case which are under consideration. For example, in Lundy's case, supra, the following is shown: "At this time deceased spoke to appellant and said: 'Get out of the road, you son-of-a-bitch, or I will fill you full.' Upon making these remarks, deceased threw his hand to his side, leaving the impression upon appellant's mind that he was about to draw his pistol."

The facts of this case differentiate it from the case of Williams v. State, 87 Texas Crim. Rep., 280, 221 S. W., 287. Williams defended upon apparent danger and communicated threats, and the court correctly held the charge faulty in failing to take into account the statutory declaration in subdivision 1, of article 1222, supra.

In Dugan's case, supra, according to the appellant, at the beginning of the encounter the deceased said: "Damn you, I will kill you," at the same time drawing a knife and cutting Dugan under the arm.

In the reviewing court, the charge of the trial court must be construed in the light of the facts, and in estimating the effect of the charge, the language of article 666, C. C. P., 1925, cannot be ignored. See Davis v. State, 107 Texas Crim. Rep., 389, 296 S. W., 605.

Exception was reserved to that part of the court's charge which instructed the jury on the presumption arising from the use of a deadly weapon.

In paragraph 10 the jury were instructed that the specific intent to kill was essential; that the instrument used was to be taken into consideration in judging the intent; that if the knife, as used, was not likely to produce death or great bodily harm, it was not to be presumed that death was intended, and if the knife was not a deadly weapon, then the specific intent to kill must be proved by the facts and circumstances.

In the next succeeding paragraph of the charge, the effect of the language used is that if the knife used by the appellant was, from the manner used, an instrument reasonably calculated to produce death or great bodily harm, the presumption of an intent to kill would exist. The foregoing

is not the language, but the substance of the paragraphs of the charge under consideration.

Formerly the statute authorized, and in a proper case required, that the jury be given an instruction in substance in accord with a statute reading as follows: "If the instrument be one not likely to produce death, it is not to be presumed that death was designed, unless from the manner in which it was used such intention evidently appears." (Article 1261, P. C., 1925).

In the charge in question, the learned trial judge had in mind that section of the statute. However, the article mentioned was expressly repealed by the Acts of the 40th Legislature, Regular Session, p. 412, chap. 274, sec. 3, in which it was said: "Chapter 18 of Title 15 of the Penal Code of 1925 is hereby repealed." See Davis v. State, 110 Texas Crim. Rep., 605, 10 S. W. (2d) 116.

The statute authorizing a charge on the presumption mentioned having been withdrawn by the repeal of the statute, the instruction offends against the rule forbidding a charge upon the weight of the evidence, and is calculated to turn the presumption against him on the vital issue of intent to kill.

The contention that there should be an instruction to the jury on the law of assault with intent to murder upon the theory that the act of the appellant was not the cause of the death of the deceased but that it was due to the intervening cause of peritonitis is not deemed sound. We find in the record no evidence supporting the view mentioned. See Spicer v. State, 115 Texas Crim. Rep., 110, 28 S. W. (2d) 810; Perrett v. State, 75 Texas Crim. Rep., 94, 170 S. W., 316; Lee v. State, 67 Texas Crim. Rep., 137, 148 S. W., 706; Manley v. State, 69 Texas Crim. Rep., 502, 154 S. W., 1008; Corpus Juris, vol. 4, pages 1092-1099, secs. 3075-3078; also Spicer v. State, 120 Texas Crim. Rep., 440, 46 S. W. (2d) 685.

For the same reason, the refusal of a charge on circumstantial evidence was properly denied.

There was no impropriety in submitting to the jury the question of the sanity of the deceased and his consciousness of approaching death at the time he made the dying declaration. See Stroud v. State, 113 Texas Crim. Rep., 621, 24 S. W. (2d) 52.

The omission from the charge of an instruction on the law of defense of property is deemed correct. It is thought that the evidence raises no issue requiring an instruction to the jury covering the appellant's right to defend against an injury to his person less than intent to kill.

The criticisms of the procedure, particularly the charge of the court, are numerous. They have been examined and discussed so far as deemed necessary to the disposition of the appeal. Without assuming to assert that the parts of the charge not discussed were accurate in all respects,

we will state that we have failed to perceive any reversible error save such as are hereinabove pointed out.

For the reasons stated, the motion for rehearing is granted, the order of affirmance is set aside, the judgment of the trial court is reversed and the cause remanded.

*Reversed and remanded.*

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.